VILAS NAT. BANK OF PLATTSBURGH v. NEWTON et al.

(Supreme Court, Appellate Division, Third Department. January 5, 1898.)

1. FRAUDULENT CONVEYANCES—INTENT OF DEBTOR—SUFFICIENCY OF EVIDENCE.
A firm which was largely indebted transferred all its property to the mother-in-law of a member of the firm in consideration of money loaned to said firm. A corporation was then organized to carry on the business, the property was turned over to the corporation by the transferee, and the stock was distributed among the members of the former firm and their relatives, who were creditors. The whole management of the business was left during all these transactions with the members of the former firm, and after the incorporation they were made the chief officers, and a provision made for regular salaries. The transferee of the original conveyance did not ask that the property be transferred to her, nor did she ask for further security for the money loaned, but the transfers were made wholly upon the suggestion and solicitation of the debtors. *Held*, that the intent of the firm was to hinder and delay, if not to defraud, its creditors.

2. SAME—BONA FIDE PURCHASERS—FAILURE TO MAKE INQUIRY.
Under 2 Rev. St. p. 137; § 5, providing that in a conveyance to defraud creditors the title of the purchaser for valuable consideration shall not be affected unless such purchaser had notice of the fraudulent intent, the transferee, by the fact that she merely failed to make inquiry, cannot claim to be a purchaser without notice of the fraudulent intent, since she did not intend at the time of the transfer to buy the property absolutely, and release the antecedent debt.

3. SAME—TRUSTS—INTENT.
The transferee took the property in trust for the use of the members of the former firm, and hence the conveyance was void under 2 Rev. St. p. 135, § 1, and Id. p. 137, § 1, providing that conveyances for the use of the person making the same shall be void as against creditors, and that conveyances made to defraud creditors shall be void.

4. SAME—PARTICIPANT—BENEFIT TO PREJUDICE OF CREDITORS.
One chargeable with participation in a fraudulent conveyance can take no benefit through it to the prejudice of the creditors.

5. WITNESS—EXAMINATION.
While grantors in a purported fraudulent conveyance may testify as to whether or not they made the conveyance with the intent to hinder, delay, or defraud creditors, the question as to what was their intention in executing the papers is an improper form of inquiry.

6. EVIDENCE—DECLARATIONS.
Where a conveyance is made to hinder or defraud creditors, declarations by the debtors to a creditor, made after the transfer, for the purpose of reconciling the creditor, are admissible against the transferee as well as against the debtors, since they are part of the res gestæ.

7. APPEAL—PRESUMPTION.
Where, in a hearing before a referee, testimony was admitted subject to certain letters to be introduced by the party offering it, upon the failure to introduce the letters it will be assumed on appeal that the referee rejected the testimony conditionally admitted.

8. WITNESS—CREDIBILITY.
Where a witness is recalled, and testifies to a material fact, and the failure to testify to this fact when first on the stand is used on cross-examination to attack the credibility of the witness, that part of the minutes of a former trial containing the testimony of the same witness on the same point is admissible to rebut the implied inculpation.

Appeal from judgment on report of referee.

Action by the Vilas National Bank of Plattsburgh against John M. Newton and others to set aside conveyances as fraudulent against

48 N.Y.S.—64

creditors.　From the judgment in favor of plaintiff entered upon the report of the referee, defendants appeal.　Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Charles E. Patterson and Albert C. Tennant, for appellants.
William P. Rudd, for respondent.

LANDON, J.　May 20, 1891, John M. Newton and Horace B. Newton, composing the firm of Newton & Co., conveyed and transferred all the firm property, real and personal, to Mary T. Clark, the mother-in-law of John M. Newton, for the consideration, as expressed in the conveyances and transfers, of $12,298, money theretofore loaned by said Mary T. Clark to Newton & Co.　Newton & Co. were manufacturers of stove brick and fire linings in the city of Albany.　The property transferred consisted of the plant and assets of the firm, and was perhaps worth $25,000 over and above the incumbrances thereon and the liabilities of the firm, in the hands of Newton & Co., or of any other capable managers of the business, but probably would not bring enough to pay such incumbrances and liabilities if the business should be discontinued.　The incumbrances amounted to about $58,000.　The unsecured liabilities of the firm were about $42,000, of which about $13,000 was due the plaintiff, about $8,750 to the wife of Horace B. Newton, about $10,000 to the wife of John M. Newton, and $6,617 to Mary T. Clark.　The rest of the amount due her was secured.　As the greater part of the unsecured indebtedness was owing to members of the families of the partners, they conceived the idea of transferring the firm property to Mrs. Clark, in form in consideration of the firm's indebtedness to her, and then to organize a corporation, of which they should be members, and have the control, and, to an extent sufficient for their support, be the beneficiaries. They hoped in this way to keep and manage their property without being pressed or distressed by their creditors outside of their own households.　Newton & Co. probably did not at first intend to defraud the plaintiff outright.　They intended, however, to coerce the plaintiff into awaiting their convenience, and thus to hinder and delay it in the collection of its debt.　Whether they should really defraud it out of it altogether was a question they probably did not squarely face until the plaintiff sued them, and since then they have acted as if they did intend to defraud it.　Horace B. Newton and John M. Newton did, shortly after the transfer to Mrs. Clark, organize the corporation Newton & Co., Incorporated, in which they, their respective wives, Mrs. Clark, and a few of their friends, were the incorporators, with a capital stock of $125,000.　Mrs. Clark conveyed and transferred the assigned property to the corporation for the consideration of $125,000, which was paid to her in the entire capital stock. She distributed such shares of this stock among the household creditors of Newton & Co., and among others as they directed.　In the interval between the conveyances and transfers to Mrs. Clark, and her conveyances and transfers to Newton & Co., Incorporated, Horace B. Newton and John M. Newton were authorized by Mrs. Clark to

carry on the business in the same manner as before, under the name of Newton & Co., Agents, and they did so. Upon the organization of the corporation, Horace B. Newton was made chairman of the board of trustees, and John M. Newton president and treasurer of the corporation. Each one of them was allowed a salary of $1,500 per year, and they continued the same possession and control of both business and property as if no assignments or transfers had been made. Newton & Co.'s intent must be judged from their acts. Their intent was, if not to defraud the plaintiff, to hinder and delay it of its lawful debt against them. Buell v. Rope, 6 App. Div. 113, 39 N. Y. Supp. 475, and cases there cited. The appellants, however, contend that Mrs. Clark was, to use the language of the statute, "a purchaser for a valuable consideration," and that it does not "appear that such purchaser had previous notice of the fraudulent intent" of her grantors, and that, therefore, her title to the property was good. 2 Rev. St. p. 137, § 5. To take up this evidence item by item, and consider each item apart from the body which all the items make, would exhibit Mrs. Clark as an innocent, amiable, elderly lady, a creditor of the firm of which her son-in-law was a member, willing to accept the security he tendered her, and, after she had obtained it, following his advice as to its management and disposition. The learned referee considered the evidence as a whole. So considered, a different aspect is presented, and we think the referee was right in his conclusions. Newton & Co. wanted a person who would act as they directed, and ask no troublesome questions. It was better that such person should be their creditor, for then the transfer to her by them would apparently be for the "valuable consideration" which the statute mentions. If such person should ask no questions, she would not obtain "notice of the fraudulent intent" of the grantors, and thus would be in a position to nullify the legal effect of that intent. She must, in fact, hold the property in trust, to be disposed of for the use of Newton & Co. as they should direct. It should not be necessary, however, to tell her this. She must be relied upon to do what Newton & Co. or her son-in-law told her to do. Newton & Co. found such a person in Mrs. Clark. She was their instrument or tool in the fullest sense of the term. Her son-in-law lived with her. The business was done at night in her house and presence. Horace B. Newton lived at Ballston, 40 miles away, and he came by the midnight train to her house, to complete the business. She did not ask that any transfers or conveyances be made to her. She did not ask for any further security. She did not wish to embark in the manufacture of stove brick and linings, but she was willing to co-operate in bridging the firm over its difficulty. She must have supposed that the unsolicited conveyances and transfers to her were for that purpose. At the firm's request, she used them for that purpose; that is, to enable them, through her, to transfer all their property to the corporation which they contemplated organizing, and soon after organized. She permitted them to retain possession of the firm property, and carry on the firm business as Newton & Co., Agents, until the members of the firm were ready, through her co-operation, to carry it on as Newton & Co., Incorporated. If Mrs. Clark's intention had been to buy the

property absolutely for full value, and she had paid for it such full value by the release of her antecedent debt, it may be conceded that she would not be chargeable with inquiry; that actual notice of the fraudulent intent of her grantors, or knowledge of facts equivalent to such notice, would have been necessary. Stearns v. Gage, 79 N. Y. 102; Parker v. Conner, 93 N. Y. 118; Anderson v. Blood, 152 N. Y. 285, 46 N. E. 493. But Mrs. Clark, having blindly lent herself to the furtherance of the scheme of Newton & Co., is not entitled to invoke the rules which protect those who are acting at arm's length with their grantors. She was a co-actor with them, and, if she did not know their intent, it was because she did not want to know the effect of her co-operation. Judging her intent by her acts, we must conclude that she took the conveyances and transfers upon the secret trust for the use and benefit of Newton & Co., to dispose of the property transferred to her to their use as they should direct, and, as this would operate as a fraud upon the plaintiff, that she was chargeable with the intent that it should so operate. Before she transferred the property to Newton & Co., Incorporated, she held it in trust for the use of Newton & Co. This the statute (2 Rev. St. p. 135, § 1) forbids as to personal property, if necessary for the protection of creditors; and, as its effect was to hinder and delay Newton & Co.'s creditors, the statute (2 Rev. St. p. 137, § 1) forbids it as to both real and personal property. As Mrs. Clark was chargeable with participation in the fraud, she can take no benefit through it to the prejudice of creditors. Baldwin v. Short, 125 N. Y. 533, 26 N. E. 928.

The grantors of Mrs. Clark were permitted to testify that they did not convey and transfer to Mrs. Clark with the intent to hinder, delay, or defraud their creditors. They were not permitted to answer, "What was your intention in executing those papers?" The authorities permit the first form of inquiry, but we are cited to none permitting the second. The first goes to the very issue; the second, if permitted, might open up matters foreign to it,—that is, lead to false issues. The first has been criticised as an inquiry where none can follow the witness. We do not think it was error to sustain the objection.

The declarations of John M. and Horace B. Newton, made to the plaintiff after the transfer to Mrs. Clark, were received against Mrs. Clark as well as against the declarants. The conveyances and transfers were made May 20, 1891; the conveyances and transfers by Mrs. Clark to Newton & Co., Incorporated, June 12, 1891. Both transactions form part of the same scheme. The consummation of the scheme would coerce the plaintiff, and hinder and delay it, and was so intended. Pending its consummation, it was within the control of the two Newtons. Their declarations were made to reconcile the plaintiff to the scheme, or to so conciliate the plaintiff that it would not interpose and thwart the scheme, and were, therefore, part of the res gestæ, by which the scheme to which Mrs. Clark lent her co-operation was effected.

The letters written by the Newtons to plaintiff after the transfer of the property to Newton & Co., Incorporated, seem to promise payment of their demand, but, as its validity was established by judg-

ment, these letters do not appear to be prejudicial to the defendants.

The president of the plaintiff testified to declarations of William M. Newton, a son of one of the defendants. The witness was uncertain. whether the declarations were contained in a letter of the defendants. Newton of which William was the bearer, or his declarations apart from the letter. Upon defendants' objection the learned referee received the declarations, subject to plaintiff's producing the letter, or making proof of William's agency. It was a question of the order of proof. The plaintiff did not produce either the letter or proof of William's agency. However it might be before a jury, we must assume that the learned referee, having, in his discretion, heard the testimony subject to the condition that it should be received if made competent, did not receive it. The same witness, having been examined by the plaintiff and cross-examined by defendants, was subsequently recalled, and testified to a material fact which he had not before referred to. Being pressed to explain, upon cross-examination, why he had omitted it upon his first direct examination, he answered, "I can't think of any other reason except I forgot it, and I saw it in the minutes I swore to before." The minutes he referred to were of his examination in supplementary proceedings taken by plaintiff against the defendants Newton. The plaintiff was permitted to introduce the part of said minutes showing that he then so testified. We think this was competent. The inculpation implied by the cross-examination was that, if the testimony was true, the witness would have stated it before, and, by producing his former testimony, he met the implied charge. There are no other exceptions which seem to require discussion.

Judgment affirmed, with costs. All concur.