HAWLEY v. HAWLEY et al.

(Supreme Court, Appellate Division, Fourth Department. February 13, 1900.)

1. WITNESSES—IMPEACHMENT—REBUTTING TESTIMONY—ADMISSIBILITY.
Where a witness testified to a delivery, during mortgagee's lifetime, of an assignment to her husband of the mortgage which her husband claimed in the cause, and testimony was introduced to discredit her, tending to show that she was ignorant of it until found among the mortgagee's papers after his death, declarations in accordance with her testimony, made by her prior thereto, were admissible to rebut such evidence.

2. SAME—EXCLUSION—MATERIAL ERROR.
Where a case was close, and the credibility of a witness who gave important testimony for appellant was assailed, it was material error to exclude testimony tending to support her credibility.

Appeal from judgment on report of referee.

Partition by Miles J. Hawley against Ann Hawley and others. From a judgment entered on the report of a referee in favor of defendants, plaintiff appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

John Griffin, for appellant.

John G. Wicks, for respondents.

SPRING, J. The action is partition, brought by an heir at law, and in the complaint it is alleged that the plaintiff is the owner of a bond and mortgage by assignment from his father, upon which there is unpaid the sum of $1,550. The only controversy in the case is over the assignment of this bond and mortgage. John B. Hawley was the father of the present tenants in common of the land, and at one time was the owner of the bond and mortgage in question; and after his death, which occurred in 1893, an unrecorded assignment of the same, signed by said decedent, and duly acknowledged, was found among his papers. The assignment, which was dated April 7, 1895, was received in evidence on the trial, and in proof of its delivery the widow of the decedent, who was his second wife, testified that before their marriage an antenuptial agreement was made between them, and during these negotiations Mr. Hawley, Sr., told her of this bond and mortgage, and that he had assigned it to his son, Miles, the plaintiff in this action. The chief testimony, however, on which the transfer of this assignment rested was that of Ann Hawley, the wife of the plaintiff. She testified that in April or May, 1885, the old gentleman came to their house, and handed the plaintiff the mortgage and assignment, saying: "Here, Miles, is the mortgage and assignment on the Jamestown place. I told you I would give it to you." The son took it, and the father told him to give it to Ann, the wife of the plaintiff, to take care of, and the papers were handed to her; that Miles then went away, the father remaining to dinner. As he started to leave, he told Mrs. Hawley he feared she might lose the papers, and she better give them to him; that he would take care of them for Miles, and she accordingly let him take them. The testimony in rebuttal of the evidence of Ann Hawley

is, in the main, inferential. After the death of John B. Hawley, his children met at his house, and looked over his papers, and among them the bond, mortgage, and assignment were found. It is claimed that when this assignment was produced it was handed to Ann Hawley, and she inquired what it was, adding, "I can't make it out." There was considerable evidence of this same character, and the argument made that Ann Hawley knew nothing of this assignment until this meeting of the children of John B. Hawley after his death. This was an important item of testimony, and, as the referee discredited the story of Ann Hawley, the evidence must have been potential in rebutting her positive testimony of the delivery of the assignment of the bond and mortgage. To counteract the effect of this imputation upon Ann Hawley, evidence was offered that during the lifetime of John B. Hawley she knew of this assignment; that, at the request of the plaintiff and his wife, an attorney, also named Hawley, wrote to the county clerk of Chautauqua county, to ascertain if this assignment had been recorded. This attorney was sworn as a witness on behalf of plaintiff, and an attempt was made to show the conversation culminating in the writing of this letter, and the letter itself was produced; but the evidence, including the letter, was excluded by the referee. Again, it was sought to be shown both by Ann Hawley and a Mrs. Lynch that a conversation occurred between them in 1890 in relation to this assignment, and that attempt was frustrated by objections interposed on behalf of defendants which were sustained by the referee. Exceptions were taken to the various rulings of the referee excluding all this class of evidence. While the letter of the attorney may not have been competent, in the absence of explicit testimony showing Ann Hawley knew what it contained at the time it was written, the rest of this excluded testimony was significant to repel the charge that Ann Hawley had fabricated her story of the delivery of the assignment. There was no motive in 1890 for her to make a false statement as to this assignment, and the testimony referred to was competent to expunge the discredit resting upon the witness by the accusation that she knew nothing of the assignment until after the death of her father-in-law. The rule is thus stated in the headnote to Robb v. Hackley, 23 Wend. 50, and quoted approvingly in Re Hesdra's Will, 119 N. Y. 615, 23 N. E. 555:

"Where the witness is charged with giving his testimony under the influence of some motive prompting him to make a false or colored statement, it may be shown that he made similar declarations at a time when the imputed motive did not exist. So, in contradiction of evidence tending to show that the account of the transaction given by the witness is a fabrication of late date, it may be shown that the same account was given by him before its ultimate operation and effect arising from a change of circumstances could have been foreseen."

Herrick v. Smith, 13 Hun, 446; Baber v. Railroad Co. (Com. Pl.) 29 N. Y. Supp. 40; Bank v. Newton, 25 App. Div. 62, 48 N. Y. Supp. 1009.

This is an exception to the general rule of evidence excluding hearsay testimony, and rests for its support solely upon the ground that a witness testifying to a material fact should have an opportunity to remove the stigma incident to testimony impugning his veracity.

It is not proof of any fact in the case, but purely collateral, affecting the credibility of the witness. We cannot say the error 'in the exclusion of the testimony was immaterial. The case was close, and the testimony of Ann Hawley was very important, and credence was not given to her story by the referee. If the plaintiff could have satisfactorily shown that she had knowledge of this assignment long before the death of John B. Hawley, it would have taken the sting out of the impeaching testimony, so far as it tended to show a lack of knowledge in her.

The judgment is reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.