LINCOLN NAT. BANK v. FISCHER–HANSEN.

(Supreme Court, Appellate Division, First Department.   March 11, 1904.)

1. EVIDENCE—CORROBORATION OF WITNESS—COMPETENCY.
    On an issue as to whether defendant, at the time that he called at a bank, revoked his guaranty of certain notes, testimony of defendant's attorney to the effect that on the day of the call he was consulted by defendant about the notes, and advised defendant to go to the bank personally, and revoke the guaranty, was incompetent.

Appeal from Trial Term, New York County.

Action by Carl Fischer-Hansen against the Lincoln National Bank. From a judgment in favor of defendant, and from an order denying a motion for a new trial, plaintiff appeals.   Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

David Gerber, for appellant.

John R. Dos Passos, for respondent.

LAUGHLIN, J.   On the 2d day of October, 1901, the defendant signed and delivered to the plaintiff a guaranty in writing of the payment at maturity of any note or notes made by Paul Bertin and his wife, or either of them, to the extent of $5,000, and renewals thereof.   On the 22d day of May thereafter Bertin and his wife made their promissory note, whereby they promised to pay, for value received, three months after date, to the order of themselves, $1,000, and before maturity, for value, indorsed and transferred the same to the plaintiff. The plaintiff, in purchasing and discounting the note, relied upon the defendant's guaranty.   This note was not paid at maturity, although payment was duly demanded, and the note was protested for nonpayment.   The action is brought to recover of the guarantor the amount of the note, together with interest.   The defense interposed was a revocation of the guaranty on the 5th day of May, 1902, or 17 days prior to the making of the note.   The question of fact litigated upon the trial was whether or not the guaranty was revoked.   There was a sharp conflict in the evidence.   The court instructed the jury that, if the guaranty was revoked, the plaintiff could not recover, but that otherwise the defendant was liable.   This note was given in renewal of a note upon which the defendant was clearly liable under his guaranty. Of course, if before the renewal the defendant revoked his guaranty, and notified the bank to insist on prompt payments of the outstanding notes at maturity, the renewal released the defendant, and the bank must have overlooked the revocation, or determined to extend the credit to the makers without other security.   The defendant testified

that on the 5th day of May, 1902, he called at the bank, and "asked to see somebody in authority"; that a gentleman whom he now recognizes as Mr. Van Santford was called over, to whom the defendant introduced himself, and said that he had come to revoke his guaranty of the payment of some notes for Mr. and Mrs. Bertin, and said to Mr. Van Santford that "henceforth I will not be responsible for any new notes, or renewals or extensions; you must keep him to his payments"; that thereupon Van Santford excused himself for a moment, and went back to an adjoining room, and conferred with another gentleman, who was seated at a roll-top desk, and then returned, and said, "It will be all right, Mr. Fischer-Hansen," whereupon the defendant said, "Is it necessary for me to write?" to which Mr. Van Santford replied, "No, not at all." The defendant was corroborated by the testimony of his rent collector and office boy, whom he asked to have accompany him to the bank. It appears that the defendant is an attorney. The plaintiff gave evidence tending to show that when Mr. Bertin first opened an account at the bank the defendant accompanied him, and at this time they both asked for a line of discount of $5,000; that the defendant shortly thereafter, and before executing the guaranty upon which this action is based, and before the discount was allowed, wrote the cashier of the bank, saying that he would be willing to act as surety for Bertin to the extent of $5,000, "the exact details of which he would leave to the bank to arrange." Mr. Van Santford, who was the assistant cashier, testified in behalf of the plaintiff. He conceded that early in May the defendant called at the bank, and inquired of him when the next Bertin note would fall due, but he denied that anything was said concerning the revocation of the guaranty. Mr. Van Santford says that he referred the defendant to the discount clerk. Mr. Baird, the discount clerk, corroborated Van Santford in this regard, and says that the defendant inquired of him as to the maturity of the different Bertin notes, and "said that he did not care to have the bank renew them for any larger amount," and was assured that it would not. The defendant then called as a witness in his behalf Mr. Kalish, of the firm of Lindsay, Kremer, Kalish & Palmer, his attorney, who had been his counsel for some time. Kalish was permitted to testify, under the plaintiff's objection and exception that the evidence was incompetent, that the defendant consulted him with reference to this guaranty, saying that he had learned that Bertin was in failing circumstances, and that the witness advised the defendant to notify the bank at once to insist upon full payment of the note, and that he revoked the guaranty. The witness further testified that the defendant informed him that one of the notes was falling due on the day of the consultation, and for this reason he advised the defendant to go personally to the bank at once, instead of writing a letter. The defendant then testified that after this interview with his attorney he went to the bank, and gave notice of revocation of the guaranty, as already stated. This evidence was clearly incompetent. There is no rule of evidence that permits the testimony of a witness that he did a certain thing to be corroborated by the testimony of another to whom he previously declared his intention of doing it. The rule that, when the testimony of a witness is attacked or sought to be impeached upon the ground

that it is false, and has been induced by a motive disclosed by the evidence, it may be shown to sustain his credibility that he made similar declarations at a time when no motive existed for falsifying, declared in Herrick v. Smith, 13 Hun, 446, Matter of Hesdra, 119 N. Y. 615, 23 N. E. 555, Hawley v. Hawley, 48 App. Div. 301, 62 N. Y. Supp. 671, and kindred cases, has no application. The testimony of the attorney was of no probative force upon the question as to whether the defendant gave notice to the assistant cashier of revocation of the guaranty as to the future. The interview between the defendant and his attorney may have taken place without his subsequently going to the bank at all. Therefore testimony of the attorney is no evidence either that the defendant subsequently went to the bank or as to what he said upon arriving there.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.