FRANK GIBBONS and Another, Plaintiffs, *v.* COLEMAN PERKINS and Others, Defendants.

Supreme Court, Erie County, July 21, 1928.

**Payment — payment by mistake — plaintiffs' assignor carried insurance on automobile of one of defendants — said policy did not cover property damage — in action by other defendant against insured defendant, judgment was recovered for both personal injuries and property damage, but two items were separated — evidence — entire judgment was paid through mistake — plaintiffs, who were attorneys for insurance carrier, paid amount of property damage and took assignment — report made by one of plaintiffs, attorney for insurance company, that he refused to pay property damage, is admissible — plaintiffs may recover.**

The plaintiffs were attorneys for the insurance company which carried a policy on an automobile of one of the defendants, insuring him against personal injuries which he might cause, but not against property damage. The other defendant sued the insured for both personal injuries and property damage and recovered a judgment. The verdict rendered specified the amount of damages for personal injuries and the amount for injuries to property. After the time within which an appeal could be taken had elapsed, the attorney for

said defendant applied to the plaintiffs and one of them, who was not familiar with the case, authorized the payment of the entire judgment. The insurance carrier, upon discovering the mistake, called upon the plaintiffs to make good the amount paid for property damage and they did so and took an assignment of the claim. A written report made by one of the plaintiffs to the insurance carrier, immediately after said plaintiff claims to have talked with the attorney for the plaintiff in the prior action in which he stated that the company would not pay the property damage, was admissible in evidence, although self-serving and hearsay. That report in connection with other testimony shows that the insurance company did not intend to pay the amount of the judgment representing property damage.

The money paid by the insurance carrier on that part of the judgment representing property damage was evidently clearly paid under a mistake, and the plaintiffs having taken an assignment of the claim may recover that amount from the defendants.

The contention by the defendant who was plaintiff in the original action that by reason of the mistake and the delay he has been placed in a position whereby he will be unable to recover from his codefendant, is not supported by the evidence, for it clearly appears that his codefendant was execution proof at the time the judgment was rendered.

ACTION to recover money paid under mistake.

*Frank Gibbons* in person and for the plaintiffs.

*Wortley Paul,* for the defendants.

CROSBY, J. Heretofore defendant Perkins sued defendant Lehman for damages for injuries to both person and property growing out of an auto collision. Lehman carried insurance with the Continental Casualty Company against loss by reason of any personal injuries he might cause, but carried no insurance against loss by reason of property damage. Plaintiffs were attorneys for the insurance company, and as such undertook to defend Lehman, pursuant to the insurance company's contract. The defendant Kennedy was attorney of record for Perkins, plaintiff in that action. Mr. Paul, attorney for defendants in the present action, tried the case for plaintiff. The trial resulted in a verdict for the plaintiff Perkins in that action. Gibbons, one of the plaintiffs herein, tried that case for Lehman, defendant in that action. The verdict was in favor of Perkins and against Lehman in the sum of $3,615. Upon that verdict a judgment, including costs, was entered against Lehman for $3,705.50.

Upon the trial in the action of Perkins against Lehman, Mr. Gibbons asked the court to instruct the jury to separate the verdict into two parts, stating how much was for personal injury and how much was for property damage. Perkins' attorney took no part in that request, but made no objection to it. They must have known that the request was made, and ought to have surmised

why it was made. The fact that Gibbons and Pottle habitually defend negligence actions for insurance companies is well known to every trial lawyer in Buffalo. The verdict was rendered in two separate items according to instructions.

After the judgment was entered, Gibbons, then attorney for Lehman, and Kennedy, then attorney for Perkins, had a conversation. It is undisputed that Gibbons told Kennedy, in substance, that he would pay a certain amount, equal to the part of the verdict which represented personal injuries plus the costs. It is undisputed that Kennedy told Gibbons, in substance, that he was not interested in any compromise, and that he would listen to nothing excepting the payment of the full judgment. The dispute about the conversation is this: Gibbons swears that he told Kennedy that he (Gibbons) represented an insurance company whose policy covered only personal injuries, that he was not at all interested in Lehman, and that if Kennedy would accept the amount for which the insurance company was liable under its policy, and release the insurance company, he might pursue his remedy against Lehman for the balance. Kennedy flatly denies this part of the conversation.

Gibbons testified that he then talked with Paul, who tried the case for Kennedy, and that he said to Paul substantially what he had said to Kennedy. Paul swears that such a talk with him may have occurred, but that he does not recall it, and that, in any case, he did not communicate to Kennedy what Gibbons said to him, if anything, upon the subject of the extent of the liability of the insurance company.

Mr. Gibbons offered in evidence a written report which he made to his client, the insurance company, immediately after his talk with Kennedy. The report strongly corroborates Gibbons' version of the conversation. The letter was objected to as being hearsay and a self-serving declaration. I deferred ruling upon the admissibility of this letter with the understanding that if it was finally admitted I would so indicate in this opinion, and that defendants were to be deemed to have taken timely exception to the ruling. I now admit the letter in evidence, granting the exception. It is hearsay, and it is self-serving, but it was written by Gibbons in the course of his duty to his client, and at a time and under circumstances which negative any suggestion that it could have been prompted by a design to make evidence to be used later. The thought that such a letter could later become useful to him in the instant case or in any situation that could be foreseen or imagined could not possibly have occurred to Gibbons at the time he wrote the letter. We have here a situation in which the rule against

hearsay and self-serving declarations is and should be relaxed. We realize that such evidence should be scrutinized with the greatest care and only admitted when it is clear that human ingenuity did not foresee and plan the advantage to be reaped from making the self-serving declaration. Subjected to this test it still seems to me this letter ought to be admitted. There is clear and unmistakable authority for this ruling. (*Herrick* v. *Smith*, 13 Hun, 446; *Hawley* v. *Hawley*, 48 App. Div. 301.)

With Gibbons' letter in evidence, I have no hesitation in finding that Gibbons disclosed to Kennedy the facts about the insurance company's liability and the extent thereof. I do this without suspecting Kennedy of any wrongful intention whatsoever. No two men will remember a conversation alike. But there was good reason why Gibbons should state that his insurance company was liable for only a part of the verdict; there was no reason why he should not. Everybody knows that he represents insurance companies habitually. His request to have the verdict returned in two parts must have suggested the reason for the request.

Some time after the conversation before related Gibbons took a vacation; and, after the time had run within which an appeal could be taken from the judgment, Kennedy demanded from Gibbons' law partner, Pottle, payment of the judgment. Pottle informed himself of the fact that the judgment had been rendered, that his insurance company had defended the cause, that the time for appeal had expired, but did not inform himself that his insurance company was liable for only a part of the verdict, and he in Gibbons' absence drew a draft upon the insurance company for the whole judgment and took a satisfaction thereof. The insurance company paid the draft, later discovered the mistake, called upon Gibbons and Pottle to make good for the money the company had paid over and above the part for which it was liable, assigned their cause of action to Gibbons and Pottle, who are here suing Kennedy, his client Perkins, and their own former (nominal) client Lehman asking, *first*, that Kennedy and Perkins repay to them the money that represented property damage; *second*, that, if such relief is denied them, the satisfaction of judgment be set aside, and they reinstated, by subrogation, to a position where they may pursue their remedy, for what it is worth, against Lehman.

It is well settled that if one party to a contract seeks to set it aside for mistake he must show one of two things, viz.: (1) Either that there was a mutual mistake of fact, or (2) such mistake on the part of the party seeking to set aside the contract, and conduct on the part of the other party amounting to fraud in taking

Misc. 583]                    Supreme Court, July, 1928.

advantage of a mistake which he knows is being made by the one with whom he is dealing.

In regard to payments of money on a contract, a party seeking to set aside the payment is not compelled to prove so much. It is sufficient if he prove that he alone made a mistake (even though negligently) in paying the money, unless the circumstances are such that it would be unfair and inequitable to compel the party, receiving the payment, to return it; and the burden is cast upon the party resisting the repayment to prove that it would be inequitable for him to be compelled to pay back. (*Ball* v. *Shepard,* 202 N. Y. 247; *Mayer* v. *Mayor, etc.,* 63 id. 455; *Hathaway* v. *County, etc.,* 185 id. 368.)

This rule is, of course, subject to some reasonable limitations, some of which are stated in the opinions in the cases last cited. The one we are particularly interested in here is this: that a party should not be called upon to pay back money, paid to him by the mistake only of the one paying to him, when conditions are such that, by paying back, he will be placed in a worse position than he would have been had he never received the money at all. Now, the claim has been made by defendants in the instant case that Lehman had an auto worth fifty dollars at the time the judgment was paid and satisfied, to which Perkins might have resorted to collect at least a part of that portion of the verdict relating to property damage; and that he now has not even so much as fifty dollars worth of property; and that, to that extent, at least, Perkins has been, or will be, wronged if compelled to pay back to Gibbons and Pottle the four hundred dollars or thereabouts.

But, according to the cases last cited, the burden is upon defendants to show that it would be inequitable for them to have to pay back; and a careful perusal of Lehman's testimony in regard to his property discloses nothing from which it can be found that he was ever anything but execution proof. His testimony in regard to the property he had is a meaningless muddle.

I have reached the conclusion that the plaintiffs are entitled to the remedy first prayed for in their complaint. I have passed favorably upon most of their requests to find. But my minutes of trial show that the property damage as fixed by the verdict was $400, not $415; so I have deferred passing upon requests Nos. 7, 10, 15, 21, 22 and 23 of facts, and request No. 3 of law, until that matter can be checked up.

I feel that, under all the circumstances, no costs should be allowed, and so have denied plaintiffs' eighth request as to the law.