### GELBIN v. NEW YORK, N. H. & H. R. CO.
### No. 117.

Circuit Court of Appeals, Second Circuit.
Jan. 9, 1933.

John M. Gibbons, of New York City (E. R. Brumley, of New York City, of counsel), for appellant.

Feltenstein & Rosenstein, of New York City (Moses Feltenstein, Abraham Rosenstein, and Sidney J. Feltenstein, all of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Appellee's intestate was killed on August 7, 1929, at a grade crossing in South Millbrook, Dutchess county, N. Y., while proceeding in a westerly direction in his motorcar and while crossing the appellant's railroad tracks, by a train proceeding in a northerly direction. The crossing is unprotected by signal bell, gates, or watchman. A controverted issue of fact arose as to the condition of the warning disc sign on the right-hand side of the highway as the appellee's intestate was proceeding. It was located 292 feet from the near rail of the track. Appellee's witnesses testified that the sign was ineffectual as a warning of danger because of its condition; also that it was covered with foliage. They said it was rusted and filled with bullet holes. The appellant's proof was to the effect that the sign was free from foliage covering and was freshly painted. Appellee's case rested upon proof that the track was invisible to a stranger to the crossing, as the appellee's intestate was, approaching down hill.

It was of utmost importance to the defense to show that the sign to the east of the crossing was visible and served as a notice to one approaching the crossing. The appellant called an employee of the State Department of Public Works, one Morris, whose duty it was to paint signs, guide rails, and fences along the highway. He inspected the highway conditions every week or ten days. He said he painted the sign on the 2d or 3d of August, 1929. He made a daily record of his work, put it in a notebook, and gave the notebook to his daughter. His daughter testified that she copied the information her father thus gave her accurately in a notebook. She identified two pages which she wrote at her father's dictation under date of August 2, 1929, reading: "Reset 4 R. R. signs in Millbrook, No. 568. Painted & Re-

set 2 R. R. Signs on No. 1722. 2 men mowing roads on No. 5460."

The second item referred to the sign in question. This was highway No. 1722. The appellant then offered this record in evidence, and it was excluded and an exception taken. It became known as Exhibit N for identification. The assistant to the district engineer of the New York State Department of Public Works was called by the appellant, and he identified the monthly report (Exhibit I for identification) sent in by Morris. It contained the following item: "Aug. 2— * * * Rd. No. 1722—Painted & 2 R. R. Signs"—among others, of work done on that day. The assistant engineer's duty gave him supervision of the construction and maintenance of the state roads, which included the highway in question. This report, made by Morris, was kept in a folder in the office of the engineer. It was made in the course of his duties, and related to the performance of his duties, and was part of the records of the office. It was offered in evidence under the authority of section 374-a of the Civil Practice Act of the state of New York. That section reads:

"*Admissibility of certain written records.* Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of said act, transaction, occurrence or event, if the trial judge shall find that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term business shall include business, profession, occupation and calling of every kind."

This disc sign read "R.R." in black letters on a white background. Its care was under the supervision of the State Department of Public Works. It was the custom of the department to require its employee, Morris, to make a monthly report. Morris' daughter testified that, in addition to making the entries in a notebook (Exhibit N), she made this monthly report for her father (Exhibit I) in her handwriting. It was sent as the report to the department. Morris' testimony was contradicted at the trial, and the claim was made that he testified falsely. Ex-

hibits N and I were consistent statements made by him before the trial, and were not of recent origin, and appellant contended that they were admissible. These records were made before bias or influence could have affected his testimony, if such were the case. He had testified on cross-examination that he kept the sign in good condition and that it was in good condition on the day of the collision. His prior consistent statements were made within a short time after the event, and were of corroborating effect. The condition of the sign at the trial was important as an issue, and it was argued, as it might be, that Morris was responsible for its condition and would not publicly admit his failure to maintain it. Corroboration by his written records, based upon his temporary memorandum made prior to the trial, was therefore effective in the defense of the action. We said in Di Carlo v. United States, 6 F.(2d) 364, 366:

"It is well settled that, when the veracity of a witness is subject to challenge because of motive to fabricate, it is competent to put in evidence statements made by him consistent with what he says on the stand, made before the motive arose. The common sense of such a rule has been too strong for the formal objection that the evidence is hearsay, and indeed the objection is in substance not good anyway, since the witness is by hypothesis there to be cross-examined."

■ Where parol evidence is offered to impeach the testimony of a witness establishing that he has given a different account of the facts, it is generally not admissible, in order to confirm his testimony, to prove that at other times he has given the same account which he is giving under oath. His testimony under oath is better evidence than his confirmatory declarations not under oath, and a repetition of his assertion does not carry his credibility further. However, there is the exception where the testimony is assailed as a fabrication of a recent date or a complaint recently made. Then, in order to repel such imputation, proof of antecedent declarations of the party may be admitted. Ellicott v. Pearl, 35 U. S. (10 Pet.) 412, 9 L. Ed. 475. So, where counsel imputes to the witness a design to misrepresent from some motive, interest, or relationship, in order to repel such imputation, it may be shown that the witness made a similar statement before the supposed motive existed or before the motive or interest permitted him to make a different statement of the facts. Jones, Evidence (3d Ed.) § 870.

■ At bar, the entries were made in the course of business. The appellant did not seek merely to refresh the recollection of the witness by their use. Counsel for the appellee imputed to the witness a design to misrepresent from a motive of interest, and we think it was competent to show that the witness made a similar statement before the supposed motive existed. This was done by offering the records made in the course of his business. It tended to establish that the witness was not indulging in a fabrication. People v. Rohl, 138 N. Y. 616, 620, 33 N. E. 933; Hawley v. Hawley, 48 App. Div. 301, 62 N. Y. S. 671; Gibbons v. Perkins, 132 Misc. 583, 230 N. Y. S. 273.

■ Where a witness is charged with giving his testimony under the influence of some motive prompting him to make a false or colored statement, it may be shown that he made similar declarations at a time when the motive did not exist. Robb v. Hackley, 23 Wend. 50; Matter of Hesdra, 119 N. Y. 615, 23 N. E. 555. Here the recorder of his memorandum testified; the entries were part of his regular system made almost contemporaneously with the work performed. At that time there was no motive for falsification. The two reports are consistent with each other. They recorded a transaction within the personal knowledge of the witness Morris. While he destroyed his daily record, he first had his daughter make in effect original entries of the performance of his work. The Spica, 289 F. 436, 444 (C. C. A. 2).

Moreover, under section 374-a of the Civil Practice Act, there is a modern liberality of the common-law rule, and in Johnson v. Lutz, 253 N. Y. 124, 170 N. E. 517, 518, the Court of Appeals of the state of New York said:

"The purpose of the Legislature in enacting section 374-a was to permit a writing or record, made in the regular course of business, to be received in evidence, without the necessity of calling as witnesses all of the persons who had any part in making it, provided the record was made as a part of the duty of the person making it, or on information imparted by persons who were under a duty to impart such information."

■ To exclude these exhibits was harmful error. Crawford v. United States, 212 U. S. 183, 29 S. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392. If the decedent was advised of the existence of the crossing as he proceeded, the degree of care imposed upon him was that of a wayfarer who did know of the crossing. That care has been recently an-

nounced. See Baltimore & O. R. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645; Leiby v. Penn. R. R., 58 F.(2d) 970 (C. C. A. 2); Wilson v. Lehigh V. R. R. Co., 38 F.(2d) 59 (C. C. A. 2).

Judgment reversed.