**AFFRONTI v. UNITED STATES.**

No. 12817.

Circuit Court of Appeals, Eighth Circuit.

Oct. 14, 1944.

---

Harvey Roney, of Kansas City, Mo., for appellant.

Thomas A. Costolow, Asst. U. S. Atty., of Kansas City, Mo. (Maurice M. Milligan, U. S. Atty., and David A. Thompson, Asst. U. S. Atty., both of Kansas City, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

The appellant (who will be referred to as "defendant") on September 7, 1943, entered a plea of not guilty to an indictment which was returned on January 21, 1932. The indictment contained ten counts, each of which charged a separate sale of morphine in Kansas City, Missouri, in violation of § 2553(a) of 26 U.S.C.A.Int.Rev. Code, 53 Stat. 271. This statute makes it unlawful to "sell, dispense, or distribute" certain drugs, including morphine, "except in the original stamped package or from the original stamped package."

The case was tried to a jury. At the close of the government's evidence, the defendant moved for a directed verdict of not guilty as to each count. The motion was denied. The defendant introduced no evidence. The court instructed the jury to return a verdict of not guilty as to the first count of the indictment, but submitted to the jury the question of the defendant's guilt under the remaining counts. The jury returned a verdict of guilty as to all counts except the first. From the judgment and sentence entered upon the verdict the defendant has appealed to this Court.

The questions which this Court is called upon to decide are: (1) Whether the evidence of the government made the question of the guilt of the defendant one of fact for the jury; (2) whether the court admitted incompetent and prejudicial evidence over the objection of the defendant; (3) whether the instructions of the court were fatally defective; and (4) whether the sentence was one which the court might lawfully impose.

(1) In considering the sufficiency of the evidence to sustain the verdict of the jury, this Court must take that view of the evidence which is most favorable to the government; must give to the government the benefit of all the inferences which reasonably may be drawn from the evidence; and must refrain from concerning itself with the credibility of witnesses and the weight of evidence. Holmes v. United States, 8 Cir., 134 F.2d 125, 130, certiorari denied 319 U.S. 776, 63 S.Ct. 1434, 87 L.Ed. 1722; Egan v. United States, 8 Cir., 137 F.2d 369, 375, 376; Miller v. United States, 8 Cir., 138 F.2d 258, 259.

The government's case depended upon the virtually uncorroborated evidence of Narcotic Inspector Morningstar, who, at the times the alleged sales of morphine were made, was stationed in Kansas City, Missouri. We shall not attempt to detail his testimony relative to each count of the indictment. The evidence introduced in support of the second count of the indictment is typical of the evidence introduced in support of the third, fourth, fifth and sixth counts; and the evidence relating to the seventh count is typical of that introduced to support the eighth, ninth and tenth counts.

The second count charged an illegal sale of 119 grains of morphine on October 20, 1931, at and near Gladstone Boulevard and Windsor Avenue, Kansas City, Missouri. The Narcotic Inspector testified that he was, at that time, investigating the defendant, whom he knew; that an informer named Simmons was working with the Inspector and under his supervision, at Excelsior Springs, Missouri; that on October 20, 1931, at that place, the Inspector searched Simmons, and, after determining that he had no money or narcotics, fur-

nished him with $35; that the Inspector saw Simmons enter the automobile of Ross, a drug addict, and saw them start toward Kansas City; that the Inspector, in his car, followed Simmons and Ross from Excelsior Springs to Windsor Boulevard and Gladstone Boulevard in Kansas City, Missouri, where he saw them park; that he saw Ross leave his car and stand at the curb near where his car was parked; that shortly thereafter the Inspector saw the defendant drive up in his car, saw Ross go to the defendant's car and hand the defendant something, and saw the defendant then hand something to Ross and drive away; that Ross and Simmons then drove back to Excelsior Springs; that the Inspector followed them, keeping them in sight, and followed Simmons to his room, and there obtained from him a tin can containing 119 grains of morphine (which was deposited in the vault of the Narcotic Office in Kansas City); that upon Simmons' return to Excelsior Springs he was searched by the Inspector and found to have no money; that on the trip from Excelsior Springs to Kansas City and return the Inspector observed that Ross and Simmons had no contacts with anyone except the defendant; that the can of morphine had no stamps upon it; that Simmons died in 1936, and Ross in 1938. The can which the Inspector testified he obtained from Simmons on October 20, 1931, was introduced in evidence and was similar to the other cans containing morphine which were introduced by the government in support of the other counts of the indictment.

The seventh count of the indictment charged an illegal sale of 142 grains of morphine on December 1, 1931, at Independence Avenue and Lydia Avenue in Kansas City, Missouri. The evidence of the government relative to this count showed that on that date the Inspector and Simmons met in Kansas City, Missouri; that the Inspector searched Simmons for money and narcotics, and found none; that he gave Simmons $75; that he furnished Simmons a rented car which had been searched and was found to contain no narcotics; that Simmons entered the rented car and drove to Twelfth Street and Troost Avenue; that the Inspector followed in his car; that the defendant and Tudie LaScoula came from a nearby pool hall; that LaScoula entered Simmons' car; that the defendant entered his own car; that Simmons and LaScoula drove to a point on Lydia Avenue just south of Independence Avenue; that in a few minutes the defendant, in his car, appeared and drove up close to the side of Simmons' car; that LaScoula then left Simmons' car and walked toward the car of the defendant; that Simmons reached over into the defendant's car, and defendant reached from his car; that the Inspector saw Simmons hand something to the defendant, and the defendant hand a package back to Simmons; that LaScoula then entered the defendant's car and they drove away together; that the Inspector followed Simmons' car to Thirteenth and Wyandotte Streets in Kansas City, where Simmons delivered to the Inspector a tin can containing 145 grains of morphine upon which there were no stamps; that the Inspector searched Simmons and found that he had no money.

In addition to this evidence of the Inspector, there was evidence that, after the return of the indictment in this case, the defendant, after having given a $5,000 bond for his appearance, did not appear at the time the case was called for trial in June, 1932; that his bond was forfeited, a warrant for his arrest issued, and a search made for him, but that he was not found and did not become available for trial until after he had been brought back from New York to the State of Missouri in January, 1943.

■■ The evidence of the government did not make a perfect case as to any count, but we think it made a prima facie case as to each of the counts upon which the verdict of guilty was based. The government, in order to make a case for the jury, was not required to prove the defendant guilty to a mathematical certainty or beyond the possibility of a doubt. Taking the government's testimony as a whole, it presented a rather convincing picture of a large dealer in contraband morphine, who, in carrying on his illicit trade, made the sales for which he was convicted. We think the jury was justified in inferring, from the evidence, that the informer Simmons with the money furnished him by the Inspector procured from the defendant the morphine produced in evidence. It cannot be said that, as a matter of law, the evidence of the government, including that which showed that the defendant became a fugitive from justice, was as consistent with innocence as with guilt. The trial court did not err in denying the defendant's motion for a directed verdict.

(2) The defendant contends that the court committed reversible error in permitting the government to show that the defendant, by disappearing, not only forfeited his bond in this case, but also forfeited bonds in two other cases pending against him at the time. We think the contention is without merit. The government was entitled to show the circumstances under which the defendant disappeared. Moreover, the evidence complained of was at least as beneficial to the defendant as it was harmful, since it showed that the indictment in the instant case was not the only inducement for his leaving the jurisdiction.

The defendant asserts that the court erred in permitting the Narcotic Inspector, on redirect examination, to testify with respect to certain portions of his official report of investigation to the Bureau of Narcotics. During the cross-examination of the Inspector, counsel for the defendant requested that he be furnished the official report for the purposes of further cross-examination. The court asked counsel for the government if he could send for it. He said that he could, and then remarked to counsel for the defendant: "Will you offer it in evidence when you get it?" Counsel for defendant said: "I will examine it and use it for the purpose of cross-examination." Again counsel for defendant was asked by opposing counsel: "Will you offer it in evidence?" The reply was: "Of course I would." After he had obtained the report, defendant's counsel, in cross-examining the Inspector, sought to discredit his testimony by showing that in important respects his official report was inconsistent with his testimony. On redirect examination, counsel for the government endeavored to show that the official report made by the Inspector was not as inconsistent with his testimony as the cross-examination had indicated. Counsel did this by reading to the Inspector certain portions of the report and asking him if the report contained these statements. To this, counsel for the defendant objected on the ground that the statements were hearsay, incompetent, and not binding on the defendant. The court ruled that such portions of the report as related to matters about which the Inspector had been cross-examined might be admitted. The portions of the report which were read into evidence showed that the Inspector had reported to his superiors that purchases of morphine

had been made from the defendant by the informer Simmons with money furnished by the Inspector. Some of the statements read from the report were clearly inadmissible as substantive evidence. The portions of the report, however, which were admitted on redirect-examination were not received as substantive evidence, but to show that the official report and the Inspector's testimony were not in as serious conflict as might have been inferred from the cross-examination. We think the evidence complained of by the defendant was admissible upon the important issue of the credibility of the Inspector.

The general rule is that when the testimony of a witness has been impeached by evidence of his prior inconsistent statements, his testimony ordinarily may not be confirmed by proof of his prior consistent statements. An exception to the rule is that if the testimony is assailed as a fabrication, proof of the prior consistent statements of the witness (which ante-date the existence of motive to fabricate) may be admitted to sustain his credibility. See Ellicott v. Pearl, 10 Pet. 412, 439, 9 L.Ed. 475; Conrad v. Griffey, 11 How. 480, 492, 13 L.Ed. 779; Powers v. United States, 5 Cir., 294 F. 512, 514; Di Carlo v. United States, 2 Cir., 6 F.2d 364, 366; Boykin v. United States, 5 Cir., 11 F.2d 484, 486; Dowdy v. United States, 4 Cir., 46 F.2d 417, 424; Gelbin v. New York, N. H. & H. R. Co., 2 Cir., 62 F.2d 500, 502; Malone v. United States, 7 Cir., 94 F.2d 281, 287; Townsend v. United States, 3 Cir., 106 F.2d 273, 275; United States v. Potash, 2 Cir., 118 F.2d 54, 57; Wigmore on Evidence, 3rd Ed., Vol. IV, §§ 1126, 1129; Annotation to Sweazey v. Valley Transport, Inc., 140 A.L.R. 1, at page 21 et seq. Another exception to the general rule is that if some portions of a statement made by a witness are used on cross-examination to impeach him, other portions of the statement which are relevant to the subject matter about which he was cross-examined may be introduced in evidence to meet the force of the impeachment. See Annotation in 140 A.L.R. page 24, citing State v. Patterson, 176 La. 1013, 147 So. 62, and Moore v. Re, 131 Cal.App. 557, 22 P.2d 45. See also, Jones v. United States, 9 Cir., 162 F. 417, 431, 432; Powers v. United States, 5 Cir., 294 F. 512, 514; New York Cent. R. Co. v. Dunbar, 2 Cir., 296 F. 57, 60. In Brady v. United States, 8 Cir., 39 F.2d 312, this Court evidently considered that the admission of evidence

of prior consistent statements was violative of the general rule. The exceptions to the rule were not discussed in that case.

 We think that the question of the admission or rejection of evidence of prior consistent statements to sustain the credibility of a witness who has been impeached by evidence of prior inconsistent statements is addressed to the sound discretion of the trial court, and that its ruling should not result in a reversal on appeal except where there has been a prejudicial abuse of discretion. See Wigmore on Evidence, 3rd Ed., Vol. IV, § 1126, page 199. Evidence of prior consistent statements should, of course, be received with great caution and only for the purpose of enabling the jury to make a correct appraisal of the credibility of the witness who has been impeached.

The redirect examination of the Inspector by counsel for the government, of which the defendant complains in the instant case, might have been more carefully restricted than it was, but, in view of the circumstances under which the official report of the Inspector was brought into the case, we regard the scope of the examination as having been kept within permissible limits.

(3) We turn to defendant's criticism of the court's instructions. No requests for instructions were presented to the court in advance of the charge. From the argument of defendant's counsel to the jury, which is in the record, it is apparent that he was of the opinion that the verdict of the jury would turn upon the jury's appraisal of the credibility of the government's main witness, the Narcotic Inspector. Referring to the discrepancies between the Inspector's testimony at the trial and his official report, counsel for defendant, in his argument, said:

"Now, gentlemen, these weren't just common mistakes that you heard. I think His Honor, when he instructs you gentlemen on the credibility of the witnesses, I think he is going to tell you that if you believe that any witness swore falsely to any material fact in this case you are at liberty to disregard that part of his testimony or all of his testimony.

"Gentlemen, with these mistakes, the first testimony of Al Morningstar, we reviewed it here just in cross-examination in the last hour, that wasn't a mistake. He testified here directly as to a complete narcotic violation. He is an old agent, 15 years in the service. He testified to the whole thing, complete in its entirety, so that you gentlemen could go out and conscientiously render a verdict on his testimony alone. And gentlemen of this jury, when he testified to that first transaction at Excelsior Springs, I don't believe there is a man of you who doesn't believe it was a falsehood. It couldn't have been otherwise. I leave it to your fairness."

Counsel for defendant then, in his argument, referred to portions of the official report which he contended showed that the Inspector had not personally observed the making of a sale by the defendant as charged in the second count of the indictment, nor personally observed the transactions referred to in the last three counts of the indictment. In his argument to the jury, counsel for the defendant made no reference to the evidence of the defendant's flight. The argument contained no suggestion that the government's evidence was circumstantial and that the jury might believe the testimony of the Inspector and justifiably acquit the defendant.

The court's first instruction to the jury was:

"Gentlemen, in this case the government charges the defendant in 10 counts with unlawfully selling morphine. There has been no evidence offered on the first count of the indictment, hence you will, as to that count, find the defendant not guilty."

The court then outlined the remaining nine counts, and gave the usual instructions as to the burden of proof, presumption of innocence, credibility of witnesses, and weight of evidence. The court, by way of suggestion, told the jury that "The dispute, gentlemen, appears to hinge largely around the question of whether or not you will accept the testimony of the witness Morningstar"; that that was "probably, after all, the controlling question in the case"; that it was for the jury to determine whether the testimony of the witness should be accepted; and that if they concluded that the witness intentionally testified falsely to a material fact, they were at liberty to disregard all of his testimony.

After completing the charge, the court said to counsel: "Have I overlooked some subject, gentlemen, about which the jury should be informed?" Counsel for defendant then presented to the court a number of written requests for instructions. The court told counsel that the proper time to

make requests for instructions was before, and not after, the court had delivered its charge, but that if counsel would point out any subject which had been overlooked, the court would cover it. The court was then asked by defendant's counsel to charge that "a sale is a contract by which property is transferred from the seller to the buyer for a fixed price in money, paid or agreed to be paid by the buyer," and, in substance, to charge that before the jury could convict the defendant, it must find that a sale as defined had been made by him. The court was also requested by counsel for defendant to give the usual instruction with respect to circumstantial evidence; to give an instruction that no presumption of guilt arose from the failure of the defendant to testify; and to give an instruction that evidence of flight was not conclusive evidence of guilt and created no legal presumption of guilt.

In our opinion, the defendant's requests for instructions, coming, as they did, after the court had completed its charge to the jury, amounted to nothing more than objections to the charge upon the ground that it was defective because it failed to include the substance of the instructions requested.

As supporting his contention that the court erroneously failed to give to the jury the technical legal definition of "sale," the defendant refers to the opinion of this Court in Helvering v. Nebraska Bridge Supply & Lumber Co., 8 Cir., 115 F.2d 288, in which, in affirming the Board of Tax Appeals, we held that the word "sale," as used in a taxing statute, meant "sale" in its legal sense and did not include a forfeiture of land for taxes, where the owner received no consideration for the forfeiture. The Supreme Court of the United States, in 312 U.S. 666, 61 S.Ct. 827, 85 L.Ed. 1111, without hearing argument, reversed the decision of this Court in the case referred to, in a per curiam opinion. We think that the word "sale" in the statute which makes it unlawful to sell contraband narcotics was used in its ordinary and popular sense and that the failure of the court to define a word so generally used and so well understood was not error.

Some of the evidence in this case was circumstantial, such as the evidence of flight. Some was direct and positive. The court might properly have told the jury that some of the evidence was circumstan-

tial, and have included in its instructions the circumstantial evidence rule. Since the evidence of the government was unexplained and uncontradicted, and, if believed, was inconsistent with the innocence of the defendant, we think that the failure of the court to include the circumstantial evidence rule in its instructions was not error. Gurera v. United States, 8 Cir., 40 F.2d 338, 340; Corbett v. United States, 8 Cir., 89 F.2d 124, 128; Stryker v. United States, 10 Cir., 95 F.2d 601, 604.

In response to the request that the jury be instructed that no presumption of guilt arose because of defendant's failure to testify, the court gave this additional instruction to the jury:

"Gentlemen, I have been requested to instruct you, and I do instruct you, that no presumption of guilt or innocence arises from the mere fact that the defendant did not testify in his own behalf."

There was no objection to this instruction, and, while counsel for defendant states that he was given no opportunity to object, there is nothing in the record to substantiate that statement. Counsel says that the instruction virtually deprived the defendant of the presumption of innocence. We do not agree. The instruction amounted to nothing more than a statement that the defendant was neither hurt nor helped by his failure to testify, which was true.

We think that the court should in its charge have explained to the jury the weight which they properly might accord to the evidence of flight. The failure of the court, however, to make any reference to the evidence of flight was, in our opinion, harmless error under the circumstances of this case. It is true that counsel for the government, in their arguments to the jury, referred to the flight of the defendant as a circumstance indicating his guilt. Jurors are entitled to be credited with having average common sense. It is inconceivable that the jury could have believed that the evidence that the defendant had fled would, standing alone, prove him guilty of having sold narcotics at the particular times and places referred to in the indictment. Moreover, the charge of the court carried a clear intimation to the jury that evidence of flight alone was insufficient to justify a finding of guilt. The court told the jury that there was no evidence to sustain the charge contained in the first count, and that they must return a verdict of not

guilty as to that count. That was equivalent to stating that the evidence of flight, standing alone, would not justify a finding of guilt. Furthermore, the court, in referring to the credibility of the Inspector, said: "If you do not accept his testimony, then the logical conclusion is a verdict of not guilty." We are satisfied that no prejudicial error was committed by the court in failing to instruct the jury as to the effect of the evidence of defendant's flight.

(4) The court imposed a sentence authorized by statute. This Court cannot concern itself with the question of the reasonableness of the sentence. "Where a District Court imposes a sentence authorized by a statute of the United States, it commits no error of law." Holmes v. United States, 8 Cir., 115 F.2d 528, 529; Johnson v. United States, 8 Cir., 126 F.2d 242, 251; Holmes v. United States, 8 Cir., 134 F.2d 125, 135.

Our conclusion is that no errors of law affecting the substantial rights of the defendant occurred during the trial, and that the defendant is not entitled to have his conviction set aside. Compare, Miller v. United States, 8 Cir., 21 F.2d 32, 36, 37, certiorari denied 276 U.S. 621, 48 S.Ct. 301, 72 L.Ed. 735; Salerno v. United States, 8 Cir., 61 F.2d 419, 424, 425; Guy v. United States, 71 App.D.C. 89, 107 F.2d 288, 290, 291, certiorari denied 308 U.S. 618, 60 S.Ct. 296, 84 L.Ed. 516.

The judgment appealed from is affirmed.