344 F.2d 245
 Shellie DAGLEY, Administrator of the Estate of Charles W. Collins, Deceased, Plaintiff-Appellant,
v.
The ARMSTRONG RUBBER COMPANY and Armstrong Rubber Mfg. Co., Defendants-Appellees.
ZIFFRIN TRUCK LINES, INC., Plaintiff-Appellant,
v.
The ARMSTRONG RUBBER COMPANY and Armstrong Rubber Mfg. Co., Defendants-Appellees.
 No. 14581.
 No. 14582.
 United States Court of Appeals Seventh Circuit.
 April 1, 1965.
 
 Alan H. Lobley, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for appellant.
 Richard W. Yarling, Donald L. Tunnell, Yarling & Tunnell, Indianapolis, Ind., for appellees.
 Before HASTINGS, Chief Judge, and DUFFY and MAJOR, Circuit Judges.
 HASTINGS, Chief Judge.
 
 
 1
 Plaintiffs, Shellie Dagley, administrator of the estate of Charles W. Collins, deceased, and Ziffrin Truck Lines, Inc. (Ziffrin), brought these diversity actions against defendants, The Armstrong Rubber Company and Armstrong Rubber Manufacturing Company, to recover damages for wrongful death and property damage allegedly caused by the negligent manufacture and design of a truck tire by defendants and by defendants' breach of implied warranty that the tire would be reasonably fit for use on the highways.
 
 
 2
 The district court dismissed plaintiffs' Count I based on breach of implied warranty and submitted the negligence issue in Count II of the complaints to the jury. The jury rendered verdicts for defendants under Count II and judgments were entered thereon. Plaintiffs appealed.
 
 
 3
 The Armstrong Rubber Company designed and Armstrong Rubber Manufacturing Company manufactured the tire in question for use on the highways by trucks. The tire was sold to a distributor in Indianapolis.
 
 
 4
 On October 1, 1959, Ziffrin purchased the tire from the distributor and installed it on the right front wheel of a 1959 Mack tractor.
 
 
 5
 On September 2, 1960, Collins, an employee of Ziffrin, was driving the Mack tractor with an attached trailer containing cargo in a northerly direction on U. S. Highway 41, a few miles north of Morocco, Indiana. The truck went off the highway and turned over, killing Collins.
 
 
 6
 Dagley brought an action under the Indiana Wrongful Death Act, Ind.Ann. Stat. § 2-404 (Burns' Supp.1964), and Ziffrin filed an action for damages to the tractor, trailer and cargo. The two cases were consolidated for trial.
 
 
 7
 The issues presented on appeal are whether the district court committed reversible error in refusing to admit into evidence a written statement made at the scene of the accident by an eyewitness to the accident and whether it erred in dismissing plaintiffs' counts alleging breach of implied warranty.
 
 
 8
 * One of the principal questions in the trial was whether the right front tire on the tractor driven by Collins blew out before the accident and thus caused the accident or whether the blow out occurred after and was a result of the accident.
 
 
 9
 There were two eyewitnesses to the accident. Plaintiffs called John Crocker, a truck driver, as their witness. Crocker had been an employee of Ziffrin in the years 1938, 1939 and 1940. He testified he was driving south on U. S. 41 on the date of the accident. He stated:
 
 
 10
 "* * * There was a low grade, and I approached over the top of the grade and I saw a Ziffrin truck coming, meeting me, and when he got about 70 to 75 feet, the right front wheel, the tire blew, and the truck immediately dropped. I heard the tire blow and I saw the fender drop down by the edge of the shoulder and heard the concussion of the tire. * * *
 
 
 11
 "* * * The State Trooper got there, I told him there was no pulse on the boy, I stayed there and made a statement to the State Police * *.
 
 
 12
 "* * * In 1938, '39 and '40, I worked for Ziffrin Truck Lines and I knew several of the boys and several of them still worked there. When I saw a Ziffrin truck, I just looked to see whether it was anybody I knew, and I was watching the truck very closely when I saw him coming, to see if it was someone I knew * *."
 
 
 13
 On cross-examination defendants, over the objection of plaintiffs, asked Crocker whether he saw the truck hit a hole in the highway about one-quarter of a mile south of the accident. He answered that he did not. Defendants then asked whether he recalled being questioned about the accident on November 9, 1962 at his residence in Orlando, Florida, at which time the questions and answers were recorded in writing by Margery E. Hill, a court reporter. He replied that he did remember. Defendants asked Crocker whether he replied, in response to a question, that he saw the truck hit a hole. He denied giving such an answer.
 
 
 14
 Defendants, as part of the presentation of their case, called Hill as a witness. She testified Crocker made the statement denied by him concerning the truck hitting a hole one-quarter of a mile south of the scene of the accident.
 
 
 15
 Immediately following her testimony the court instructed the jury as follows:
 
 
 16
 "Now, ladies and gentlemen of the jury, before we call the next witness, with respect to the entire testimony of this witness, Miss Margery Hill, none of the evidence elicited from this witness is to be considered by you as evidence in this case, as proof or disproof of any of the issues of the plaintiffs' complaint or the defendants' answer. This witness has been offered for one purpose and one purpose only by the defendant: to impeach the witness Mr. Crocker. That's for you to determine, whether or not that was done in whole or in part, no one else. * * *
 
 
 17
 "* * * The statements that he made prior to trial are not considered as evidence in the case, but you can readily see, if a witness comes before a jury and testified under oath concerning certain facts, and if that same party made statements long before, out of Court, not in your presence, which would be in conflict with what he testified to in trial, it would be something for the jury to consider as to whether or not he has testified to in trial is the truth or in error. That's for the jury to determine."
 
 
 18
 The other eyewitness to the accident, Harry Krieger, was called by defendants. He testified he was following the truck at a distance of approximately 100 yards at the time of the accident. He stated:
 
 
 19
 "* * * [My wife and I] did not hear any sound such as the sound of a tire blowing out. * * * We did not have a radio in the car, the left front window was lowered. * * * There was nothing to prevent my hearing the sound that might come from the truck. As it traveled to and off the edge of the highway, I could see the right side of the cab. There was no evidence that a tire had blown out on the right side of the tractor. * * *"
 
 
 20
 Plaintiffs, in rebuttal, called as a witness Kenneth Richcreek, a Detective-Sergeant with the Indiana State Police, who investigated the accident. Richcreek identified plaintiffs' Exhibit 32 as a statement written by Crocker at the scene of the accident at Richcreek's request. Plaintiffs offered this exhibit in evidence, defendants objected and the objection was sustained.
 
 Plaintiffs state that this exhibit states:
 
 21
 "Sept. 2, 1960
 
 
 22
 "I was going south on 41 at about 4:15 P.M. and noting Ziffrin Truck when he blew a right Front, went off road and hit telephone pole turning him over and soon as I could stop and get back there he was under the trailer, when we got him out I figured he was dead as I believe.
 
 
 23
 /s/ John Crocker."
 
 
 24
 The jury was given Instruction Number 14 on impeachment. It stated in part:
 
 
 25
 "If you believe from the evidence that any witness has been successfully impeached by reason of statements made out of court conflicting with statements made on the witness stand, or if you find that any witness has willfully sworn falsely to any matter or thing material to the case, you will be justified in disregarding the whole testimony of any such witness except insofar as you may find it corroborated by other credible evidence in the case or by facts and circumstances proved in the trial."
 
 
 26
 Plaintiffs urge that the district court's refusal to admit their Exhibit 32 into evidence, for the purpose of corroborating Crocker's testimony that the tire blew out prior to the accident, was reversible error. They argue that defendants attacked Crocker's credibility by testimony tending to show he made inconsistent statements concerning whether he saw the truck hit a hole prior to the accident; that defendants argued and the jury was instructed they could disbelieve all of Crocker's testimony if they found he made inconsistent statements unless his testimony was corroborated by other credible evidence; and that plaintiffs should have been permitted to introduce their Exhibit 32 to corroborate Crocker's testimony that he saw the tire blow out prior to the accident.
 
 
 27
 Whether hearsay statements of a witness made out of court, may be admitted in evidence for purposes of corroborating the witness's testimony, is a question upon which courts have widely divergent views.
 
 
 28
 Down through the 1700s the prevailing view was that a witness could always be corroborated, without any limitation, by his statements which were consistent with his testimony. IV Wigmore, Evidence § 1123, p. 194 (3d ed. 1940).
 
 
 29
 Today, all jurisdictions appear to require some form of impeachment before prior consistent statements are admissible. The most liberal view is that such evidence is admissible for purposes of corroboration regardless of the form of impeachment. Two states apply this rule. 75 A.L.R.2d 925 (1961).
 
 
 30
 When impeachment of a witness is by means of statements, inconsistent with the witness's sworn testimony, the weight of authority is that his testimony may not be corroborated by proof of his consistent statements made prior to his alleged inconsistent statements. Affronti v. United States, 8 Cir., 145 F.2d 3, 7 (1944); 75 A.L.R.2d 931. The reasoning of courts which apply this rule of exclusion is that, "The witness is discredited by the fact that he has contradicted himself and related the transaction in different ways, and to admit evidence that at some time he had made a statement consistent with his testimony would only show that at different times he had been making different statements about the same matter." 58 Am.Jur. Witnesses § 825, p. 462 (1948).
 
 
 31
 A generally recognized exception to this rule is that prior consistent statements are admissible to support a witness's testimony who has been impeached by inconsistent statements accompanied by the assertion or inference that the witness's testimony was a recent fabrication or that the witness had a motive to falsify. Affronti v. United States, supra, 145 F.2d at 7; 75 A.L.R.2d 935.
 
 
 32
 The minority view is that prior consistent statements of a witness who has been impeached by prior inconsistent statements are admissible without the necessity of showing recent fabrication or a motive to falsify. Indiana follows this view, e. g., Thompson v. State, 223 Ind. 39, 58 N.E.2d 112 (1944) (dictum); Beauchamp v. The State, 6 Blackf. 299 (1842) and Coffin v. Anderson, 4 Blackf. 395 (1837), and we follow it in this case. Rule 43(a), Federal Rules of Civil Procedure, 28 U.S.C.A.
 
 
 33
 The theory underlying this rule is that it is not a proved fact that the witness uttered a contradiction and the consistency of his other statements may help the jury in determining whether he did. IV Wigmore, Evidence § 1126, p. 198 (3d ed. 1940).
 
 
 34
 In the instant case, Crocker's credibility was attacked on his testimony that he did not see the truck hit a hole. It seems clear that under the Indiana rule evidence of statements made by Crocker to the effect that he saw the truck hit a hole would have been received into evidence. Plaintiffs, however, attempted to introduce a written statement by Crocker that the tire blew out prior to the accident. We do not feel the Indiana rule to be so broad as to permit the introduction of prior consistent statements concerning testimony upon which a witness was not impeached. In Hicks v. State, 165 Ind. 440, 442-443, 75 N.E. 641 (1905) the Indiana Supreme Court stated:
 
 
 35
 "This [Indiana] rule, however, does not authorize the admission of all prior statements of the witness in harmony with his testimony at the trial, but only such as are in harmony with the part of his testimony which has been contradicted by the alleged contradictory statements given in evidence. Evidence of such contradictory statements and such consistent statements of a witness not a party can only be considered for the purpose of determining the credit to be given to the evidence of such witness, and cannot be regarded as otherwise affecting the issues in the cause."
 
 
 36
 To adopt the rule urged by plaintiffs would require a court to admit all statements of a witness consistent with his testimony, once contradictory evidence was introduced concerning one statement in the witness's testimony.
 
 
 37
 The purpose of the Indiana rule is to enable a witness to offer evidence that he did not make contradictory statements. The statement tendered by plaintiffs is outside this purpose.
 
 
 38
 Plaintiff suggests on brief that the statement was admissible as a part of the res gestae. As shown, the statement was not offered for that purpose and we have no occasion to pass upon the merit of the suggestion.
 
 
 39
 We hold the district court did not commit reversible error in refusing to admit Exhibit 32 into evidence. We affirm the judgment below favorable to defendants on Count II of the complaints.
 
 II
 
 40
 Plaintiffs contend the district court erred in dismissing Count I of their complaints alleging breach of implied warranty. Defendants assert that privity of contract is required to state a cause of action in Indiana in implied warranty and was lacking in this case, or, alternatively, that there are grounds for affirming the dismissal of these counts without deciding the privity issue. These grounds will be discussed first.
 
 
 41
 Defendants contend that assuming, arguendo, there was a breach of implied warranty, such breach could not have proximately caused the accident since the tire in question had been in use on the truck for approximately 75,000 miles without rotation. There was no evidence, e. g., normal miles of use in a tire of this type, introduced on this issue. In the absence of such evidence we cannot hold that, as a matter of law, the alleged implied warranty had ceased to exist.
 
 
 42
 Defendants assert that the dismissed warranty counts were duplicitous of the negligence counts which were submitted to the jury and thus plaintiffs have had their day in court and should not be permitted to be heard on the same facts and issues "under a different label." We do not agree.
 
 
 43
 Warranty does not require proof of knowledge of defects or negligence, Prosser, Torts, § 83, p. 494 (2d ed. 1955), and it has been held there is no defense of contributory negligence to a warranty action. Hansen v. Firestone Tire and Rubber Company, 6 Cir., 276 F.2d 254 (1960); Chapman v. Brown, D.C.Hawaii, 198 F.Supp. 78 (1961); affirmed, 9 Cir., 304 F.2d 149; Rasmus v. A. O. Smith Corporation, N.D. Iowa, 158 F.Supp. 70, 79 (1958).
 
 
 44
 Since the jury returned a general verdict on the negligence counts, we cannot determine the basis of its verdicts for defendants. It could have found, e. g., that there were defects in the tire but that defendants were not negligent in designing or manufacturing the tire, or, that Collins was negligent in the operation of the truck and such negligence contributed to the accident.
 
 
 45
 We hold that the jury verdict and judgment on the negligence counts were not res judicata as to the warranty counts.
 
 
 46
 Defendants urge that a cause of action for wrongful death exists only by statute and the Indiana Wrongful Death Act, Ind.Ann.Stat. § 2-404 (Burns' Supp. 1964), does not provide for an action based upon warranty.
 
 
 47
 The Indiana Act states, "When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission. * * *" (Emphasis added.)
 
 
 48
 Defendants argue that an action based upon warranty is a contract action and not a "wrongful act or omission" as required by the act. They cite the following cases as authority for this proposition: Latimer v. Sears Roebuck and Company, 5 Cir., 285 F.2d 152, 86 A.L.R.2d 307 (1960); Sterling Aluminum Products v. Shell Oil Co., 8 Cir., 140 F.2d 801 (1944), cert. denied, 322 U.S. 761, 64 S.Ct. 1279, 88 L.Ed. 1588; Whiteley v. Webb's City, 55 So.2d 730 (Fla.1951) and Hasson Grocery Co. v. Cook, 196 Miss. 452, 17 So.2d 791 (1944). To our knowledge, no Indiana appellate court has decided this issue.
 
 
 49
 Warranty was in its origin a matter of tort liability and it is generally agreed today that an action in tort will lie for its breach. Yet, it has become so identified in practice with a contract of sale between plaintiff and defendant that the warranty theory has come to be regarded by some courts as solely a contract action. See Restatement (Second), Torts, Explanatory Notes § 402A, comment m at 9-10 (Tent. Draft No. 10, 1964) and Prosser, Torts § 83, p. 493 (2d ed. 1955). The cases cited above and relied upon by defendants treated warranty as a contract action.
 
 
 50
 In determining whether warranty states a cause of action in tort or contract, for purposes of this case, we must look at the law of Indiana where the accident occurred.
 
 
 51
 The Indiana Supreme Court in Wright-Bachman, Inc. v. Hodnett, 235 Ind. 307, 313, 133 N.E.2d 713, 716 (1956) stated, "It is well settled that an action of breach of warranty may be either a contract action or a tort action, depending on the allegations of the complaint. The seller's warranty has been described as a curious hybrid of tort and contract, unique in the law."
 
 
 52
 Plaintiffs declared to the district court that their warranty counts were actions in tort. The district court considered these counts as being in tort and it seems clear that under the law of Indiana they stated a cause of action based upon tort.
 
 
 53
 States which follow the general rule and permit an action for breach of implied warranty to be brought in tort have held that such actions may be brought under their wrongful death acts. E. g., B. F. Goodrich Company v. Hammond, 10 Cir., 269 F.2d 501 (1959); Skovgaard v. The M/V Tungus, 3 Cir., 252 F.2d 14 (1957), affirmed, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524; Gosling v. Nichols, 59 Cal.App.2d 442, 139 P.2d 86 (1943); Greenwood v. John R. Thompson Co., 213 Ill.App. 371 (1919); Greco v. S. S. Kresge Co., 277 N.Y. 26, 12 N.E.2d 557, 115 A.L.R. 1020 (1938). See Zostautas v. St. Anthony De Padua Hospital, 23 Ill.2d 326, 178 N.E.2d 303 (1961).
 
 
 54
 Defendants argue that the above cases are not applicable to the instant case because the wrongful death acts interpreted in those cases involved a provision not existing in the Indiana act, viz., the granting of a right of action when death is caused by a wrongful act or default. The Indiana act, supra, contains the language "wrongful act or omission" and does not include the word "default."
 
 
 55
 The above cases are not distinguishable from the instant case by the inclusion of the word "default" in the acts there construed. For example, in Skovgaard, supra, an admiralty case involving an action for death based upon a breach of warranty of seaworthiness, the court stated:
 
 
 56
 "The seaman possesses the legal right of a seaworthy ship. Whenever this legal right is infringed and harm results by reason of the ship being unseaworthy, a `wrong' occurs, whether it be of omission or commission. The Supreme Court of New Jersey has defined `wrongful act' as `any act which in the ordinary course will infringe upon the rights of another to his damage, except it be done in the exercise of an equal or superior right.' * * * Culpability is not necessary to constitute a wrong. It is the liability-creating quality of an act which makes it wrongful.
 
 
 57
 "If it be said that the New Jersey act provides redress for tortious conduct alone, we answer that providing an unseaworthy ship is a tort." Skovgaard v. The M/V Tungus, supra 252 F.2d at 17.
 
 
 58
 It appears from the above language that the court in that case did not rely upon the word "default" in holding that a warranty action could be brought under New Jersey's Wrongful Death Act. In Zostautas, supra, the Illinois Supreme Court relied upon the word "default" in the Illinois Wrongful Death Act to permit the bringing of an express contract action under the act.
 
 
 59
 Regardless of whether warranty is considered to be a contract or tort action, we agree with the above quoted language in Skovgaard to the effect that a wrongful act does not require negligence or culpability. We hold, as we feel Indiana courts would hold, that a defect in a tire caused by an act or omission of the manufacturer or designer of the tire is a wrongful act or omission and within the Indiana Wrongful Death Act.
 
 
 60
 This brings us to consideration of whether privity is a requirement in Indiana in a suit for breach of implied warranty of fitness.
 
 
 61
 Judge Eschbach in Hart v. Goodyear Tire & Rubber Company, N.D.Ind., 214 F.Supp. 817, 819 (1963), after a thorough discussion of Indiana law on this issue stated, "The conclusion, therefore, is inescapable that Indiana has never directly or by fair implication committed itself to the absolute principle for which defendant contends that privity is essential to sustain a recovery for breach of warranty." No Indiana authority has been cited to us and we have been unable to find any which holds that privity is or is not required in a warranty suit.[1]
 
 
 62
 In Elliott v. General Motors Corporation, 7 Cir., 296 F.2d 125 (1961), cert. denied, 369 U.S. 860, 82 S.Ct. 949, 8 L.Ed.2d 18, we held that privity of contract was not essential under Indiana law to state a cause of action in negligence. Subsequently, the Indiana Supreme Court adopted this rule in J. I. Case Company v. Sandefur, Ind., 197 N.E.2d 519 (1964).[2] These holdings are not dispositive of the issue before us since "[m]any courts which have repudiated the requirement of privity, where recovery is based on negligence, nevertheless refuse to ground liability on warranty except in actions by the buyer against the person who sold the dangerous article to him." 2 Harper & James, The Law of Torts § 28.16, p. 1570 (1956).
 
 
 63
 The general rule in the United States is that privity of contract is indispensable in a suit for breach of implied warranty. 75 A.L.R.2d 39, 44-45 (1961). The theory for this rule has its basis in history and was formulated at a time when public policy favored the protection of industry which was then in its early stages of growth and development. As industry matured it outgrew this need for protection and today the policy of protection of industry is being replaced by a policy "that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of some one, and the proper persons to afford it are those who market the product." Restatement (Second), Torts, Explanatory Notes § 402A, comment c at 5 (Tent. Draft No. 10, 1964).
 
 
 64
 As a result of this new policy there has developed a new concept of warranty. See Id., comment m at 9-10. The traditional concept of warranty is that the seller of a product expressly and impliedly warrants certain things concerning the product to the buyer. This warranty is a part of the contract between seller and buyer and thus has its basis in contract law. (As noted previously, however, most courts hold that warranty may also state a cause of action in tort.) This traditional concept is not being superseded by the new concept and still requires privity of contract to be enforced.
 
 
 65
 The new concept of warranty bases liability on strict liability in tort. This warranty "is a very different kind of warranty from those usually found in the sale of goods, and * * * it is not subject to the various contract rules which have grown up to surround such sales." Ibid.
 
 
 66
 The American Law Institute in May, 1964, discussed the following revision to Section 402A of its Restatement (Second), Torts, which revision would adopt this new concept of warranty:
 
 
 67
 "§ 402A. SPECIAL LIABILITY OF SELLER OF PRODUCT TO USER OR CONSUMER.
 
 
 68
 "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property, is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 
 
 69
 "(a) The seller is engaged in the business of selling such a product, and
 
 
 70
 "(b) It is expected to reach the user or consumer in the condition in which it is sold.
 
 
 71
 "(2) The rule stated in subsection (1) applies although
 
 
 72
 "(a) The seller has exercised all possible care in the preparation and sale of his product, and
 
 
 73
 "(b) The user or consumer has not bought the product from or entered into any contractual relation with the seller."
 
 
 74
 The American Law Institute noted that state courts in twelve states were in accord with this rule, federal courts had held this to be the law in four other states and three other states had adopted this rule by statute. Restatement (Second), Torts at 2 (Tent. Draft No. 10, 1964). "Since 1962 there have been so many decisions extending the strict liability beyond products `for intimate bodily use,' that it has become quite evident that this is the law of the immediate future." Ibid.
 
 
 75
 As noted above, some courts which have eliminated the privity requirement in negligence actions have refused to do so in suits based upon warranty. It appears that these courts have come to regard warranty solely as a contract action and thus running only between the parties to the contract. James, Products Liability, 34 Tex.L.Rev. 44, 193 (1955). Indiana does not regard warranty as solely a contract action. Wright-Bachman, Inc. v. Hodnett, supra.
 
 
 76
 This disparagement of treatment between negligence and warranty actions seems to be based upon a historical concept of warranty which has become outdated in view of the changing policies involved. We see no reasonable distinction between negligence and warranty actions on the issue of whether privity of contract is required and feel that the interests of society are best served by eliminating the requirement of privity in both actions, within limits such as those set out in the Restatement, supra.
 
 
 77
 It is our view that our decision in this case, holding privity of contract not to be required in Indiana in actions for breach of implied warranty, is a sequel to our decision in Elliott, supra, and the decision of the Indiana Supreme Court in Sandefur, supra, which held privity of contract not to be required in Indiana in actions for negligence.
 
 
 78
 We hold that Count I of plaintiffs' complaints, alleging breach of implied warranty, states a claim for which relief can be granted and the district court erred in dismissing this count in each of plaintiffs' complaints. The judgment of the district court based on its dismissal of Count I of the complaints is reversed.
 
 
 79
 It follows, therefore, that this cause must be remanded to the district court for trial on the issue of implied warranty raised in Count I of the complaints.
 
 
 80
 Affirmed in part, reversed in part, remanded.
 
 
 
 Notes:
 
 
 [1]
 Another opinion by Judge Eschbach has now been published which holds that a complaint based upon the strict liability of a manufacturer is sufficient to state a claim for relief under Indiana law, although there is no privity between plaintiff and manufacturer. Greeno v. Clark Equipment Company, N.D.Ind., 237 F. Supp. 427 (1965)
 
 
 [2]
 See Stewart, Products Liability: Privity of Contract — Birth, Life and Death in Indiana, IX Res Gestae (a publication of the Indiana State Bar Association) 11 (Feb. 1965) for a discussion of the evolution of privity in tort actions in Indiana