Philip Michael **SCHEMEL**, Plaintiff-Appellant,

v.

**GENERAL MOTORS CORPORATION,** Defendant-Appellee.

No. 16011.

United States Court of Appeals Seventh Circuit.

July 17, 1967.

Rehearing Denied Sept. 20, 1967, en banc.

Kiley, Circuit Judge, dissented.

William J. Marshall, Princeton, Ind., for appellant.

Thomas M. Scanlon, Raymond W. Gray, Jr., Anton Dimitroff, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., for defendant-appellee.

Before KNOCH, KILEY and CUMMINGS, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff-appellant, Philip Michael Schemel, brought this suit in the United States District Court to recover damages for personal injuries sustained by him while riding as a passenger in an automobile which was struck from the rear by a 1960 Chevrolet Impala automobile manufactured by the defendant-appellee, General Motors Corporation, and operated at that time by one Michael N. Bigham who is not a party to this suit,* at a speed of about 115 miles per hour.

---

* Plaintiff has already collected damages from the insurer of Michael N. Bigham in exchange for a covenant not to sue.

The plaintiff alleged that the defendant knew or should have known that there was no useful purpose in designing an automobile which could be driven at excessive speed, that defendant should have foreseen that the automobile would in fact be driven by someone at excessive and unlawful speed to the risk of the public in general and in particular to innocent bystanders such as plaintiff, and yet the defendant negligently designed, manufactured, and sold an automobile capable of being driven at such dangerous speed.

The plaintiff also alleged that the defendant was further negligent in truthfully advertising the speed at which its automobile could be driven thereby encouraging irresponsible persons to exceed lawful and reasonable speed limits.

The defendant's motion to dismiss plaintiff's action for failure to state a claim on which relief might be granted was sustained, and this appeal followed.

Plaintiff contends that the defendant owed a duty to use reasonable care in designing, manufacturing, selling and distributing its automobiles to avoid injuring plaintiff, that plaintiff has charged negligent acts or omissions by the defendant, resulting in injury to him, and that it was therefore for a jury to decide whether the defendant had breached its duty to exercise due care in the conditions and circumstances disclosed by the evidence.

The plaintiff does not allege that there was some defect in the automobile which prevented its driver from operating it at a lesser speed or that any defect in its brakes or steering mechanism caused the collision.

We agree with the District Judge that this Court's opinion in Evans v. General Motors Corp., 1966, 7 Cir., 359 F.2d 822, cert. den. 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70, is dispositive of the case before us. As we said there (at page 824 of 359 F.2d) the nature of the duty which the manufacturer owes presents an issue of law for the Court.

Union Traction Co. of Indiana v. Berry, 1919, 188 Ind. 514, 520–521, 121 N.E. 655, 657, 124 N.E. 737, 32 A.L.R. 1171; Kahn v. Chrysler Corp., D.C., S.D., Tex., 1963, 221 F.Supp. 677, 678; Willis v. Chrysler Corporation, D.C., S.D., Tex., 1967, 264 F.Supp. 1010. We cannot accept the plaintiff's contention that once the Court determines that a relationship exists between the parties giving rise to some duty, the determination of the nature and extent of that duty becomes a question of fact for the jury.

The plaintiff invites our attention to § 398 of the Restatement of Torts, Second:

A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.

It is the plaintiff's theory that any automobile which can be driven at speeds of 110 to 115 miles per hour on roads not designed for such speeds is dangerous for the uses for which it is manufactured.

However, § 398 is characterized by the accompanying comment as a special application of the rule in § 395 which reads:

A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its *lawful use* in a manner and for a purpose for which it is supplied. (our emphasis)

The automobile in question was not dangerous for the use for which it

was manufactured by its lawful use in the manner and for the purpose for which it was supplied.

The manufacturer is not an insurer. His duty is to avoid hidden defects and latent or concealed dangers. See Campo v. Scofield, 1950, 301 N.Y. 468, 95 N.E.2d 802, cited with approval in J. I. Case Co. v. Sandefur, 1964, 245 Ind. 213, 197 N.E.2d 519, 523. He is not bound to anticipate and guard against grossly careless misuse of his product by reckless drivers. The dangers attendant on excessive and unlawful speed are neither latent nor concealed.

We are not convinced by the plaintiff's contentions that Evans is not applicable. The plaintiff here, like the plaintiff in Evans, sought to impose on the automobile manufacturer a duty to design an automobile incapable of causing injury (or capable of minimizing injury) through foreseeable misuse for a purpose for which the automobile was never supplied.

As the District Judge said in his Memorandum Opinion:

The problem of devising standards of safety for the manufacturer of automobiles is a legislative problem.

We also hold that the defendant was under no duty in advertising its product to conceal the reserve power built into the machine, to avoid possible misuse of that power by a wantonly negligent driver.

We have carefully scrutinized the cases and other authorities cited by the plaintiff but find them of no avail to alter our opinion that the judgment of the District Court must be affirmed.

Affirmed.

---

* For a refreshing discussion of the need for reform in automobile advertising, see O'Connell, "Taming the Automobile", 58 Nw.U.L.Rev. 299, 358–370 (1963).

1. Fed.R.Civ.P. 8(f).

CUMMINGS, Circuit Judge (concurring).

Feeling bound by this Court's recent opinion in Evans v. General Motors Corp., 359 F.2d 822 (7th Cir. 1966), certiorari denied, 385 U.S. 836, 87 S.Ct. 83, I join in the affirmance. It is true that *Evans* does not dispose of the parts of the complaint attacking defendant's offensive advertising.* However, the complaint does not charge that defendant's advertising caused Michael Bigham to drive at a speed of 115 miles per hour, or even that Bigham read the reprehensible advertisements. Plaintiff's authorities simply do not support his theory of tort liability based on defendant's advertising methods. Cf. Restatement of the Law of Torts, Second, § 303. Therefore, reversal would not be justified on that ground.

KILEY, Circuit Judge (dissenting).

I respectfully dissent. In the first place, my view is that both the district court and this court violated the liberal spirit of federal rules of pleading by "pigeon-holing" plaintiff's complaint as though it were in two counts alleging separate claims for negligent design and negligent advertising. A fair reading of Schemel's complaint so "as to do substantial justice"[1] requires that we consider the allegations of unduly enticing advertising not only alone, but also in conjunction with the charges of designing an automobile with a lawless[2] speed capacity. My opinion is that the district court erred in dismissing the complaint because it does not "appear beyond all doubt" that Schemel can prove no set of facts entitling him to relief against General Motors. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

---

2. The highest legal speed limit in 44 states is 70 miles per hour or less. Three states allow speeds up to 75 miles per hour, and one allows 80. Two states allow speeds that are "reasonable and proper."

The majority opinion assumes that Schemel can prove one set of facts relating solely to negligent design, holds that set insufficient to state a claim, and only then turns to the allegations of negligent advertising. In my view, this reasoning is not adequate to uphold dismissal of a complaint under the Conley v. Gibson rule. I think Schemel's complaint states a claim against General Motors for its negligence in designing an automobile with a capacity for speeds far exceeding any legal or reasonable limit and inducing Bigham's use of that capacity by emphasizing speed in its advertising.

The majority has decided in the case before us, as in Evans v. General Motors Corp., 359 F.2d 822 (7th Cir.), cert. denied, 385 U.S. 836, 87 S.Ct. 83 (1966), that the question of the nature and *extent* of General Motors' duty is a question of law. Indiana law govern this diversity case, and under that law the nature of General Motors' duty *is* a question of law. Union Traction Co. v. Berry, 188 Ind. 514, 520–521, 121 N.E. 655, 657, 124 N.E. 737, 32 A.L.R. 1171 (1919). I disagree, however, that under that decision the *extent* of the duty is one of law. As the Indiana Supreme Court held in *Union Traction*:

> Where a duty to exercise care exists, it is always the same, regardless of the nature of the relation out of which it arises. It cannot be said that the duty to use care which arises out of the relation of carrier and passenger differs in kind, character, or degree from the duty which arises out of the relation of master and servant, or out of any other relation which imposes the legal duty to use care.
>
>    *   *   *   *   *   *
>
> This duty is defined by the law as "due care," "ordinary care," or "reasonable care," which terms are regarded by the courts as having the

same significance. * * * In defining the duty and fixing the standard of care by which the jury is to measure the conduct of the defendant, the court does not consider the facts of the particular case. The duty is the same under all relations, and the standard of care which will measure up to the duty in all cases is such care as a person of reasonable or ordinary prudence would exercise in view of all the conditions and circumstances * *.

121 N.E. at 657. This, of course, does not mean that beyond the extremes, where all reasonable men must agree, the question of violation of the duty is for the trier of fact. But the majority decision here does not purport to rest on the ground that Schemel's allegations are insufficient if proved to establish violation of a duty of due care, or that they disclose contributory negligence or assumption of risk as a matter of law.

The nature of General Motors' duty here is basically the same as that of any member of our society: the duty to act with reasonable care. Automobiles are intended to be used in an environment in which a traffic death occurs every eleven minutes and an injury every nineteen seconds,[3] and in which there are reckless, irresponsible drivers like Bigham. These are the traffic conditions under which the automobile will normally be used today and which must be considered in any meaningful application of the reasonable foreseeability rule. In my opinion, General Motors, as any other person, is chargeable with the duty of reasonably foreseeing the probable dangers of a design and the advertising it has chosen. Restatement (Second), Torts §§ 302, 302A, 302B (1965). Courts have increasingly liberalized the required scope of reasonable foresight in products liability cases,[4] including those involving automobiles. Manufacturers of automobiles have been required to anticipate the

---

3. 16 DePaul L.Rev. 261, 264 (1966).

4. See, e. g., Tracy v. Finn Equip. Co., 310 F.2d 436 (6th Cir. 1962) ; De Eugenio v. Allis Chalmers Mfg. Co., 210 F.2d 409 (3rd Cir. 1954) ; Phillips v. Ogle Aluminum Furniture, Inc., 106 Cal.App.2d 650, 235 P.2d 857 (4th Dist.Ct.App.1951) ; Mickle v. Blackman, 6th Judicial Cir. Court, York County, S.C. (March 1963).

carelessness of operators and of non-user third persons as a foreseeable risk caused by their negligent design. Carpini v. Pittsburgh & Weirton Bus Co., 216 F.2d 404 (3rd Cir. 1954); Ford Motor Co. v. Zahn, 265 F.2d 729, 733–734 (8th Cir. 1959). There is no good reason for believing that Indiana would reject this trend.[5]

I think it is especially unwise for a diversity court to extend the *Evans* decision, another diversity case, in view of the lack of guidance this court has received from the highest court in Indiana, and in view of the sharp criticism [6] *Evans* has received that it is too restrictive and resists the current trend in products liability law by eliminating a manufacturer's duty to foresee and reasonably guard against common, if "unintended" dangers. See Spruill v. Boyle-Midway, Inc., 308 F.2d 79, 83 (4th Cir. 1962); Ford Motor Co. v. Zahn, 265 F.2d 729 (8th Cir. 1959). "Indiana would unquestionably adopt the best reasoned and most intrinsically fair position, and presumably a determination by this court on such a basis would find approval with the Indiana Supreme Court." Greeno v. Clark Equip. Co., 237 F.Supp. 427, 430 (N.D.Ind.1965).

The majority's extension of the *Evans* "intended purpose" rule to determine the "extent" of General Motors' duty here is unwarranted because the issues under the complaints in *Evans* and in this case are clearly not the same. Whatever valid application the *Evans* intended purpose rule has to warranty and strict liability cases,[7] I think its use in this negligence case is wrong. In *Evans* the alleged negligent design was merely a passive cause [8] but here the alleged negligent design and advertising were active external causes of Schemel's injury.[9] The plaintiff's decedent in *Evans* was the user of defendant's car, whereas Schemel was an innocent bystander. And, most important, Bigham's use of the speed capacity here was not "unintended" by defendant, subjectively or objectively, within the meaning of *Evans*.

As to the first two of these differences, the collision alone was the active cause of the injury in *Evans*, whereas the speed capacity *and* Bigham's use of it are both active causes here. Even if collisions are "unintended" uses of automobiles and, under *Evans*, superseding causes, the collision alleged in Schemel's complaint was the *result* of the use of the lawless speed capacity.

---

5. See Chief Judge Hastings' opinion in Dagley v. Armstrong Rubber Co., 344 F. 2d 245 (7th Cir. 1965), and Judge Eschbach's opinion in Greeno v. Clark Equip. Co., 237 F.Supp. 427, 432 (N.D.Ind. 1965), where the previous Indiana requirement of privity in warranty actions was eliminated. Cf. Elliott v. General Motors Corp., 296 F.2d 125 (7th Cir. 1961), cert. denied, 369 U.S. 860, 82 S.Ct. 949, 8 L.Ed.2d 18 (1962), and J. I. Case Co. v. Sandefur, 245 Ind. 213, 197 N.E. 2d 519 (1964), where the Indiana Supreme Court followed this court's lead in dispensing with the privity requirement in negligence actions.

6. See 80 Harv.L.Rev. 688, 689, 692 (1967) (result in *Evans* derives from "excessively narrow assumption" that purpose of automobiles does not include collisions; basic assumption that manufacturer's duty is narrower in design cases than in other negligence cases is an anachronism and illogical); 42 Notre Dame Lawyer 111 (1966); 55 Ill.B.J. 238 (1966); 16 DePaul L.Rev. 261 (1966); 4 Houston

L.Rev. 311 (1966); 1966 Utah L.Rev. 698; but see 52 Cornell L.Q. 444 (1967) (Evans "strategically sound" in waiting for legislative action); Cf. General Motors Corp. v. Muncy, 367 F.2d 493 (5th Cir. 1966); Krentz v. Union Carbide Corp., 365 F.2d 113 (6th Cir. 1966).

7. It has been suggested that an automobile manufacturer should be liable on warranty or strict tort liability theories for injuries caused during normal driving, but that a showing of negligence should be required where the alleged defect causes injury only because of a collision. 1966 Utah L.Rev. 698, 706.

8. The *Evans* court noted that the plaintiff there did not allege that death or injury could have been prevented were it not for the use of the "X" frame. 359 F.2d at 824.

9. A fair reading of Schemel's complaint discloses that the capacity for lawless speed caused the accident itself as well as increasing the severity of Shemel's injuries.

The meaning of "intended purpose" in *Evans* is not clear, but I doubt that a manufacturer's subjective state of mind is legally relevant in a negligence action, except that he is presumed to intend the natural and probable consequences of his conduct. If *Evans* means that something more than this is required, Schemel's allegations of unduly enticing advertising, encouraging Bigham to use the speed capacity, are sufficient to allege a use subjectively "intended" by General Motors. And General Motors' arguments in this court demonstrate that the lawless speed capacity itself was deliberately planned to provide "reserve power" for passing and to reduce "strain" on the engine during periods of sustained operation.[10] I think it is illogical and inequitable to rule that Bigham's use of the unlawful speed capacity was unintended, when General Motors has promoted the lawless speed capacity of his and other cars and allegedly encouraged him to use it.

If the *Evans* intended purpose rule refers to an objective standard—the normal use of a product—then I think its application here is equally erroneous. I agree with the court that the use of General Motors' automobile here raises some question of reasonable foreseeability in determining the existence of a duty here. But, as I have said above, I think General Motors is bound by a duty of reasonable care. Even using the conceptual "extent of duty" framework of the majority opinion, however, I think the majority fails to distinguish an "unintended" use from an unlawful use. It may be that General Motors did not specifically intend Bigham to drive his car at the alleged 110–115 miles per hour, but whatever benefit General Motors may claim from that is rebutted by its "reserve power" statement and advertising. In view of the injuries and death resulting from excessive speeds,[11] I cannot accept the notion that the *unlawful* use here is an *abnormal* use as a matter of law[12] and that, under *Evans*, General Motors had no duty to anticipate it. In its brief, General Motors speaks of "common knowledge" that an automobile can be driven too fast. And General Motors must anticipate use of the lawless speed capacity because it could be liable for any defects causing accidents only at high speeds, where contributory negligence was not shown. See Lovejoy v. Minneapolis-Moline Power Implement Co., 248 Minn. 319, 79 N.W.2d 688 (1956).

The essential questions raised by the unlawfulness of a use are contributory negligence, where the user is injured, and proximate cause and assumption of risk, where, as here, an innocent bystander is injured. By using the "intended purpose" rule to determine the question of duty here, I think the majority obscures the real issues: whether General Motors' conduct measured up to the standard of care required; whether that conduct was the proximate cause of Schemel's injuries; and whether Schemel assumed the patent risks of meeting drivers like Bigham on the highway.

10. Defendant's brief 22–23.

11. According to statistics published by the National Safety Council:
    —10% of all fatal accidents involve a car traveling over 70 miles per hour.
    —13% of all fatal accidents in rural areas involve a car traveling over 70 miles per hour.
    —33.3% of all fatal accidents involve excess speed.
    —20.6% of all injury causing accidents involve excess speed.
    — 8.9% of all rural accidents involve two cars traveling in the same direction.

National Safety Council, Accident Facts 46, 48, 53 (1966 ed.). "Excess speed" in these statistics includes driving too fast for conditions. It is the leading factor in urban and rural fatal accidents and in rural injury causing accidents. Id. at 48.

12. In its brief, General Motors states the issue in terms of unlawful use rather than intended use: "The question here is whether defendant's duty to plaintiff included the duty to protect plaintiff from an admitted unlawful use of its product."

These questions can be matters for the court where no reasonable jury could find for the plaintiff, but I think the allegations here, if proved, are sufficient to support a verdict on each of these issues.

It is my view that under Indiana law, Schemel has sufficiently alleged that General Motors' conduct in designing and advertising the lawless speed capacity proximately caused plaintiff's injuries. The Indiana rule is that where an independent force could have been reasonably foreseen, the chain of causation is not broken. New York Cent. R.R. v. Cavinder, 211 N.E.2d 502 (Ind.App.Ct. 1965); Northern Ind. Transit Inc. v. Burk, 228 Ind. 162, 89 N.E.2d 905, 17 A.L.R.2d 572 (1949); Smith v. Thomas, 126 Ind.App. 59, 130 N.E.2d 85 (1955).

I think the majority's reliance on Restatement (Second), Torts § 395 is misplaced because the phrase there denying recovery for unlawful use is plainly limited in context and by *comment j* to uses which the manufacturer "has no reason to expect" or which are "unusual and unforeseeable." Section 395 must also be read in conjunction with sections 302, 302A, and 302B which impose liability for injuries proximately caused by the original actor through the foreseeable actions of third persons, whether those actions are negligent, reckless or criminal. Under the test stated in *comment d* to section 302A, negligence of the original actor is determined by weighing the magnitude of the foreseeable risk against the utility of the original actor's conduct. Schemel's allegations raise a jury question on this point because of General Motors' admitted knowledge of the not uncommon use of speeds over 100 miles per hour, and advertising emphasizing those speeds, because of the severity and frequency of injuries and deaths resulting therefrom, because of General Motors' admitted knowledge of the propensity of some drivers to use such speeds and it its alleged encouragement of Bigham to do so, and because of the alleged lack of social utility in designing and manufacturing an automobile capable of speeds up to 115 miles per hour.

The allegations that defendant failed to install a governor or other safety device and encouraged Bigham through its advertising to drive at speeds in excess of 100 miles per hour are sufficient to raise a question for the jury as to the reasonableness of defendant's design. Plaintiff argues that weapons such as guns and knives have beneficial uses but that the lethal speed capacity of an automobile does not. General Motors counters by citing the need for "reserve power" for passing and to reduce engine strain. In effect the majority has taken this question of reasonable conduct from the jury by ruling on the extent of duty. I think this is a most inappropriate way of deciding a question where expert testimony is necessary.

To hold that General Motors has no duty to foresee an unlawful use of its automobiles because such a use is *patently* dangerous is to confuse the issue of duty with that of contributory negligence or assumption of risk. There can be no question that Schemel, alleged to have been driving lawfully at 55 miles per hour, was free of contributory negligence. I doubt that even "defensive driving," the ultimate in due care, could have saved Schemel's car from being "rear-ended" by Bigham's car, traveling at 110–115 miles per hour. And I think that this court is wrong in holding, in effect, that Schemel "assumed" the patent risk of Bigham's recklessness *as a matter of law*. The defense of assumption of risk is based upon the balance between the social utility of the plaintiff's conduct and the known risks involved. I think a jury is entitled to decide whether Schemel's conduct here is inherently unreasonable in view of the unnecessary risks created by excess speed by reckless drivers.

The majority holding has deprived Schemel of a jury trial on each of these issues, on which the allegations are, if proven, in my opinion sufficient to support a jury verdict. A jury composed

most likely of automobile owners and drivers will fairly reflect social policy in deciding whether General Motors was negligent in designing and advertising the lawless speed capacity of its automobiles in today's traffic environment. Even if this case is to be decided on a question of law, the questions of sufficiency of evidence as to reasonableness and proximate cause are best considered in an evidentiary context, rather than on a motion to dismiss.

We cannot presuppose that such a jury would disregard proof of General Motors that designing a slower automobile is impossible or impractical in view of today's technology and ambulance and police needs, or that the manufacture of its product with such a design is unreasonable when balanced against the occasional exposure of innocent persons to the use of the lawless speed capacity and the beneficial effects of "reserve power" for passing and to reduce engine strain. Nor can we presume that a jury would place the burden of the cost of plaintiff's injury unfairly upon General Motors rather than on Bigham alone or on plaintiff. Juries have been weighing the opinions of expert witnesses on all types of issues for years, and there is no reason why the decision of this court should here displace that of a jury, especially in view of the total absence of any sources of expert knowledge on the issues at the pleading stage. 42 Notre Dame Lawyer 111, 113 (1966).

The fact that setting safety standards for the automobile industry may preferably be left to Congress does not justify dismissing the Schemel complaint.[13] Congress has enacted the National Traffic and Motor Vehicle Safety Act of 1966.[14] True, as General Motors states, the Act does not establish maximum speed limits. Actually it merely authorizes the Secretary of Commerce "[to] establish by order appropriate Federal motor vehicle safety standards."[15] The Act does not purport to create causes of action or to compensate victims, so that courts will still be called upon to decide liability for violation of the standards established. The courts should have an important place in supplementing the express purpose of the Act, "to reduce traffic accidents and death and injuries to persons resulting from traffic accidents."[16] The relatively small financial penalty for violation of the standards will hardly have the deterrent effect that suits for large awards of damages should have. Manufacturers may choose however to risk or bear the financial cost of violation as a lesser evil than the cost of upgrading the safety features of its products. "In view of the clear purpose of the Act, to protect passengers from unreasonable risk of harm in automobile collisions," it is appropriate for courts to allow compensation to those injured by violations of the Act. 80 Harv.L.Rev. 688, 694 (1967). And this court should not deny justice to Schemel individually because of the imminence of adoption of national standards promulgated in the interest of all.

I would hold that General Motors had the duty to foresee that if it designed its product with a speed capacity far exceeding any legal limit and emphasized that capacity in its advertising, recklessly inclined drivers would be encouraged to put that capacity to abnormal use and expose innocent persons like Schemel to the unreasonable risk that what happened would happen. And I would reverse the district court's judgment and remand Schemel's case for trial.

---

13. The district court in its opinion stated that if regulation in the area of maximum speed was to come "it should come in the form of an act which would apply a uniform national standard to a highly centralized national industry, and not be hammered out, higgledy-piggledy, on a case to case basis with all of the disparity which would inevitably result." Schemel

v. General Motors Corp., 261 F.Supp. 134, 136 (S.D.Ind.1966). But the development of products liability law, as most common law, has been on a pure case to case basis.

14. 80 Stat. 718, 15 U.S.C.A. § 1381 et seq. (Supp.1966).

15. 15 U.S.C.A. § 1392 (Supp.1966).

16. 15 U.S.C.A. § 1381 (Supp.1966).