Shelby J. BURTON, Administratrix of the Estate of Robert Lee Burton, Deceased, Plaintiff-Appellant,

v.

L. O. SMITH FOUNDRY PRODUCTS CO., Defendant-Appellee.

No. 74–2044.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1975.

Decided Jan. 28, 1976.

---

John F. Vargo, Indianapolis, Ind., for plaintiff-appellant.

Robert J. Oliver, Rockford, Ill., Philip F. Boberschmidt, Indianapolis, Ind., for defendant-appellee.

Before STEVENS, Circuit Justice,* RIVES, Senior Circuit Judge,** and TONE, Circuit Judge.

PER CURIAM.

This diversity case was brought by the administratrix of the estate of Robert Burton for damages resulting from an accident that caused Burton's death. The original defendant was the Osborn Manufacturing Company, but the plaintiff later added two counts directed solely against the appellee, L. O. Smith

---

* Mr. Justice Stevens participated initially as Circuit Judge, and on and after December 19, 1975, as Circuit Justice.

** Senior Circuit Judge Richard T. Rives of the Fifth Circuit is sitting by designation.

Foundry Products ("Smith"). The two added counts were based on breach of warranty and strict liability in tort; plaintiff acknowledges the two to be equivalent under Indiana law. The District Court granted summary judgment in favor of Smith on both counts, and made the direction and determination necessary to appealability under Fed.R. Civ.P. 54(b). We affirm.

The following facts are undisputed:

Burton was employed at the Indianapolis, Indiana plant of International Harvester Company, where he had worked since 1955. The accident occurred while he was participating in the repair of a molding machine, which forms molds by applying sand to metal patterns. In the operation of the machine a "parting" compound, consisting of a highly flammable liquid, is dispensed under pressure by the machine for the purpose of preventing the sand from sticking to the metal patterns.

During the repairs, another employee attempted to cut through a bolt on the machine with an acetylene torch. The flame severed a hose containing the pressurized parting compound, which escaped and ignited, causing fatal burns to Burton, who was standing nearby.

Smith had no part in the design or construction of the machine, which was manufactured by the defendant Osborn Manufacturing Company. Smith did, however, supply the parting concentrate which was the active ingredient of the parting compound. The concentrate contained a small amount of kerosene, but additional kerosene was needed to thin the material so it could be sprayed evenly on the metal patterns. Accordingly, International Harvester, pursuant to Smith's recommendation, mixed the concentrate with an equal part of kerosene to form the parting compound.

Adding kerosene increased volatility. Vapor from the parting concentrate, before it was mixed with kerosene, would ignite at 305°F. After the kerosene was added, vapor from the mixture would ignite at 190°F.

International Harvester had used Smith's product or a closely related product for some 30 years. Before the accident, Smith had never warned Harvester or its employees of the volatile nature of the product, nor had Smith recommended the use of the less flammable or "non-flammable" substitutes that were available. After the accident Harvester changed to a less volatile parting agent at Smith's suggestion and also posted signs identifying the hose carrying the parting agent and warned maintenance personnel of the danger of rupturing the hose.

The District Court found that it was common knowledge among the maintenance employees, including Burton, that a flammable liquid was used in the molding machine. Plaintiff contends there is a genuine issue as to whether such knowledge existed, but we need not consider this contention because, as we understand Indiana law, that issue is irrelevant.

The District Court based its summary judgment on several alternate grounds, including lack of defect, misuse, assumption of risk, and proximate cause. We find the first ground determinative.

█ The doctrine of strict liability, as set forth in section 402A of the *Restatement of Torts (Second)* has been adopted as the law in Indiana. *Ayr-Way Stores, Inc. v. Chitwood,* Ind., 300 N.E.2d 335 (1973); *Perfection Paint v. Konduris,* 147 Ind.App. 106, 258 N.E.2d 681 (1970); *Cornette v. Searjeant Metal Products, Inc.,* 147 Ind.App. 46, 258 N.E.2d 652 (1970). Section 402A imposes liability upon "[o]ne who sells any product in a defective condition unreasonably dangerous to the user."

█ At least three types of unreasonably dangerous defects may exist under section 402A. A product may be defective because of manufacturing flaws, defective design, or failure to supply complete information about the product's dangers. Keeton, *Products Liability,* 50 F.R.D. 338 (1970). It is not claimed that the product sold by Smith was defective-

ly manufactured. The plaintiff argues vigorously, however, that Smith failed to give necessary warnings. There is also some suggestion in the plaintiff's brief that the product was defectively designed because less flammable substitutes were available.

We consider first Smith's failure to warn. Under Indiana law, "it is well established that a product, although virtually faultless in design, material, and workmanship, may nevertheless be deemed defective . . . where the manufacturer fails to discharge a duty to warn or instruct with respect to potential dangers in the use of the product" *Nissen Trampoline Co. v. Terre Haute First National Bank,* Ind.App., 332 N.E.2d 820, 825 (1975). If this duty is breached and, as a result, a user of the product is injured, the user has a right of action against the manufacturer. The user need not be one of the persons the manufacturer had the duty to warn, if the breach of the duty to warn is a proximate cause of the injury. The question here is whether Smith had such a duty. If a duty existed, it was to warn the International Harvester employees who were responsible for receiving the parting concentrate, mixing it with kerosene, and using it, that the final mixture was highly flammable. Since Smith itself had no control over the molding machine or the surrounding work space, it was International Harvester, through these personnel, who would have to post warnings or take other precautions.

A duty to warn exists only when those to whom the warning would go can reasonably be assumed to be ignorant of the facts which a warning would communicate. If it is unreasonable to assume they are ignorant of those facts, there is no duty to warn. As an Indiana court said in *Nissen Trampoline Co. v. Terre Haute First National Bank, supra,* Ind.App., 332 N.E.2d at 825, "where the danger or potentiality of danger is known or should be known to the user, the duty [to warn] does not attach." The Indiana court cited in support of this statement *Posey v. Clark Equipment*

*Co.,* 409 F.2d 560 (7th Cir. 1969), *cert. denied,* 396 U.S. 940, 90 S.Ct. 374, 24 L.Ed.2d 242, in which this court applied 402A, as embodied in Indiana law, and held that there was no duty to warn because those who would have received the warning would normally realize the danger without the warning. As Professor Prosser states, there is no duty to warn that "a knife or an ax will cut, a match will take fire, dynamite will explode, or a hammer may mash a finger." W. Prosser, *Handbook of the Law of Torts* 649 (4th ed. 1971). See also *Dudley Sports Co. v. Schmitt,* 151 Ind.App. 217, 226, 279 N.E.2d 266, 275 (1972). Although the statements in Prosser and the *Dudley* case relate to negligence, strict liability adds little to the duty to warn except to make a seller's knowledge of the danger irrelevant. Prosser, *supra,* at 659 n. 73; see also *Posey v. Clark Equipment Co., supra,* 409 F.2d at 563–564 (referring to section 388 of the Restatement and comment *k* thereto in determining the contours of the duty to warn under section 402A).

The crucial fact in the case at bar, in our view, is that Smith's product was mixed before use with an equal amount of kerosene. Because it can reasonably be expected that any user of kerosene will know it is flammable, neither Smith nor the supplier of the kerosene had any duty to warn of that fact. For the same reason, Smith had no duty to warn users that its product did not have the effect of rendering kerosene flame-proof; no one would have reasonably expected the product to have that effect.

Of course, an "obviously dangerous" product is nonetheless dangerous, especially to employees who are unaware that they are working in proximity to it. But it was not the duty of Smith to remind International Harvester of this fact, or of the obvious precautions to be taken. Smith's duty was only to make known, to those International Harvester employees to whom it had access, properties of its product that were dangerous

but nonobvious. It did not breach that duty.

 For related reasons, the parting concentrate was not defectively designed, even though less flammable substitutes were available. Under Indiana law, a product is not defectively designed where its dangerous properties are patent. *Schemel v. General Motors Corp.,* 384 F.2d 802, 805 (7th Cir. 1967), *cert. denied,* 390 U.S. 945, 88 S.Ct. 1030, 19 L.Ed.2d 1134; *J. I. Case Co. v. Sandefur,* 245 Ind. 213, 222–223, 197 N.E.2d 519, 523 (1964); see also *Cornette v. Searjeant Metal Products, Inc., supra,* 147 Ind.App. at 57, 258 N.E.2d at 659 (Sharp, J., concurring) (product must be more dangerous than ordinary user would expect). (Again, although *Schemel* and *J. I. Case* deal with negligence, they apply with equal force to strict liability. See Prosser, *supra,* 659 n. 72, 660. See also *Greeno v. Clark Equipment Co.,* 237 F.Supp. 427, 428–429 (N.D.Ind.1965), in which the court said that "as in negligence law," obvious dangers are not a basis for liability under section 402A. *Greeno* was cited with approval in *Cornette v. Searjeant Metal Products, Inc., supra,* 147 Ind.App. at 52, n. 2, 56, 62, 258 N.E.2d at 656 n. 2, 658, 662.) The ordinary person would expect that a mixture of Smith's product and kerosene would ignite when exposed to the direct flame of an acetylene torch. Hence, the fact that it did so ignite does not prove that there was a defect.

 Although we have considered separately the plaintiff's two theories—failure to warn and defective design—both theories suffer from the same fundamental flaw. While defects can take various forms under section 402A, the basic test is failure to meet the reasonable expectations of the ordinary user as to safety. See *Greeno v. Clark Equipment Co., supra,* 237 F.Supp. at 429; *Posey v. Clark Equipment Co., supra,* 409 F.2d at 563; Prosser, *supra* at 659. See also comments *i* and *g* to 402A. Even without the benefit of the added information a warning might provide, the ordinary user's reasonable expectation was,

as we have shown, that the addition of kerosene to Smith's product would form a flammable substance. Since the product behaved as the ordinary user would expect, it was no more defective than the kerosene itself.

 As in the *Posey* case, 409 F.2d at 564, and the *Schemel* case, 384 F.2d at 804–805, we conclude as a matter of law that the product was not defective. Because Indiana law is clear on this point, we deny plaintiff's motion to certify to the Indiana Supreme Court the questions of law involved in this case.

Affirmed.