Kelly E. HINKLE, Appellant
(Plaintiff Below),

v.

NIEHAUS LUMBER COMPANY,
Appellee (Defendant Below).

No. 63A04–8611–CV–333.

Court of Appeals of Indiana,
Fourth District.

July 14, 1987.
Rehearing Denied Aug. 19, 1987.

Bruce A. Smith, Hayes, Hayes and Smith, Washington, for appellant.

Stephen Hensleigh Thomas, Rick A. Cory, Statham, McCray, Thomas & Krohn, Evansville, for appellee.

CONOVER, Presiding Judge.

Kelly E. Hinkle (Hinkle) appeals the Pike Circuit Court's entry of summary judgment in favor of Niehaus Lumber Company (Niehaus) in a products liability case.

We reverse.

ISSUES

Restated, the issues presented by this appeal are

1. whether there are genuine issues of fact to be resolved at a trial as to

(a) whether Niehaus had a duty to give reasonable warnings metal roofing material it sold to Hinkle's employer would rapidly deteriorate in a corrosive atmosphere,

(b) whether Niehaus had a duty to warn it was dangerous to crawl upon such roofing material without additional supporting devices, and

(c) whether Niehaus had a duty to warn the roofing material was in a defective condition.

2. whether the trial court erred by failing to find the facts prior to entry of summary judgment.

FACTS

In 1984, Alumax Aluminum Recycling (Alumax) needed to replace the roof over a "dross"[1] storage shed where corrosive salt compounds were stored. A roofing contractor submitted a bid for the roofing job based upon the cost of labor and fiberglass roofing materials. Fiberglass does not corrode.

However, Alumax's plant manager wanted to do the job as cheaply as possible. Determining a fiberglass roof would be too costly, he rejected the contractor's original bid and asked him to rebid the job as to labor only. When the contractor did so, the plant manager accepted the labor bid, then ordered 28 gauge sheet metal roofing material directly from Niehaus. Before that order was placed, Alumax's maintenance supervisor told the plant manager sheet metal would be more costly in the long run because it would deteriorate faster.

The roofing contractor's workmen installed this sheet metal roofing over the dross storage area. A heavier gauge metal would have been more suitable for the job. The roofing material purchased from Niehaus contained no written warnings or installation instructions of any kind.

As installed, the metal sheets on the roof overlapped approximately 18 inches at every other purlin.[2] While it was thought this overlap would add extra strength, in fact it caused more serious corrosion and deterioration.

Six months later, Hinkle, an employee of Alumax, was ordered to make repairs on

---

1. "Dross" is defined as
   1: the scum that forms on the surface of molten metal 2: waste or foreign matter: IMPURITY— ...
   Webster's New Collegiate Dictionary, G. & C. Merriam Co. (1981).

2. "Purlin" is defined as
   A horizontal member in a roof supporting the rafters.
   Webster's New Collegiate Dictionary, *Id.*

the metal roof over the dross shed. When Hinkle walked on the roof to do his job, the roof collapsed because of excessive corrosion in one of the purlin areas. Hinkle was severely injured.

Niehaus's motion for summary judgment was sustained by the trial court. It entered final judgment thereon in favor of Niehaus without making specific findings of fact.

Hinkle appeals.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Niehaus first claims it was necessary for Hinkle to make an affirmative showing it had a duty to warn or instruct as to the danger involved in placing these 28 gauge metal sheets in a corrosive atmosphere because Hinkle would carry the burden of proving that matter as a disputed element of his cause of action at trial, citing *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, in support of its argument. Further Niehaus asserts, Indiana law requires a nonmoving party faced with a motion for summary judgment to diligently contest such motion by bringing forth enough facts to show there is a genuine issue for trial, citing *Moll v. South Central Solar System, Inc.* (1981), Ind.App., 419 N.E.2d 154; and *Bassett v. Glock* (1977), Ind.App., 368 N.E.2d 18. While those assertions are true in certain instances, they are not true in this case. We deem it appropriate here to again discuss the circumstances under which it becomes incumbent upon a nonmoving party to file counter affidavits, etc., showing issues for trial in summary judgment proceedings.

Ind. Rules of Procedure, Trial Rule 56 provides in part

(C) *Motion and Proceedings Thereon.*
... The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions and affidavits filed pursuant to Trial Rule 5(D), together with any testimony show that there is *no genuine issue as to any material fact,* and that *the moving party* is entitled to judgment *as a matter of law.* ...

(E) *Form of Affidavits—Further Testimony—Defense Required.* ...
When a motion for summary judgment is made and *supported as provided in this rule,* an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate,* shall be entered against him. ... (Emphasis supplied).

Thus, in the first instance, the moving party bears the burden of showing in the manner required by the rule:

(a) there is no issue as to any material fact, and,

(b) he is entitled to judgment as a matter of law, before any burden shifts to the nonmovant. *Creighton v. Caylor-Nickel Hospital, Inc.* (1985), Ind.App., 484 N.E.2d 1303, 1305–1306; *Ancich v. Mobil Oil Corp.* (1981), Ind.App., 422 N.E.2d 1320, 1322. These requirements are the *sine qua non* to activation of the nonmovant's obligation to file affidavits or other material showing a genuine issue for trial.

Judge Buchanan succinctly stated this proposition in *Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723. There, he said,

The method of ascertaining whether a material factual issue exists is as follows: Facts alleged in the complaint are taken as true except to the extent that they are negated by other pleadings, depositions, answers to interrogatories, affidavits, or other evidence presented by the moving party. (citing cases) All of which amounts to requiring the party moving for summary judgment to shoulder the burden of establishing the lack of material factual issue.... Once the movant makes such a showing, the opposing party may not rest on his pleadings, but must then demonstrate the existence of a genuine issue for trial. (citing cases)

*Kahf,* 461 N.E.2d at 729. Unless and until the movant makes such showing, the nonmovant may rest upon the allegations of

his pleadings and other materials then of record. In addition, the nonmovant may use the affidavits, depositions, and other materials the movant files to demonstrate in opposition there are genuine factual issues requiring a trial on the merits. That is precisely what Hinkle did in this case.

When reviewing the grant of a motion for summary judgment on appeal, we stand in the shoes of the trial court. *Lafary v. Lafary* (1985), Ind.App., 476 N.E.2d 155, 158. We must liberally construe all evidence in favor of the nonmovant and resolve any doubts as to the existence of a genuine issue against the proponent of the motion. *Kahf, supra,* 461 N.E.2d at 729. Even if the facts are not in dispute, summary judgment is not appropriate if conflicting inferences arise from the facts. *Board of Aviation Commissioners of St. Joseph County v. Hestor* (1985), Ind.App., 473 N.E.2d 151, 153.

Summary judgment may not be used as a substitute for trial to resolve factual disputes. Even if the trial court believes the nonmoving party will not be successful at trial, summary judgment should not be entered where material facts conflict or conflicting inferences are possible from undisputed facts. *Grimm v. Borkholder* (1983), Ind.App., 454 N.E.2d 84, 86.

The *Celotex* court said nothing different: it stated the party moving for summary judgment bears the initial burden of "showing—that is, pointing out to the [trial] [c]ourt—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 106 S.Ct. at 2554. *Moll* and *Bassett* stand for the same proposition. Factual issues for trial clearly appear in Niehaus's discovery materials. No duty to file counter affidavits devolved upon Hinkle since Niehaus never discharged its initial burden.

## II. *Issues for Trial*

Products liability law has been codified in Indiana, *cf.* IND. CODE 33–1–1.5–1 to 33–1–1.5–8. IC 33–1–1.5–3 imposes liability upon a seller who puts a defective product into the stream of commerce which is unreasonably dangerous to any user or consumer or to his property for physical harm caused by the product if such harm was foreseeable, the product is expected to and does reach such person without substantial alteration, and the defect causes physical harm. IC 33–1–1.5–2.5 states

. . . . .

(b) a product is defective under this chapter if the seller fails to:

(1) properly package or label the product to give reasonable warnings of danger about the product; or

(2) give reasonably complete instructions on proper use of the product;

when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer.

A product, even if virtually faultless in design, material and workmanship, may nevertheless be deemed defective so as to impose liability upon the seller where the seller fails to discharge its duty to warn or instruct with respect to potential dangers in the use of the product. *Burton v. L.O. Smith Foundry Products Co.* (C.A. 7, 1976), 529 F.2d 108, 111. Further, where a defective and unreasonably dangerous product, that is, one more dangerous than a person having only the common understanding prevalent in his community would ordinarily contemplate, is sold to a person having only such common understanding, a duty to warn such purchaser of the product's unreasonably dangerous propensities arises on the seller's part. *Perfection Paint & Color Co. v. Konduris* (1970), 147 Ind.App. 106, 258 N.E.2d 681, 689–690. A duty to warn arises only as to latent or concealed dangers. *Bemis Co., Inc. v. Rubush* (1981), Ind., 427 N.E.2d 1058, cert. den'd., 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61, for clarification, see *Bridgewater v. Economy Engineering Co.* (1985), Ind., 486 N.E.2d 484; *Craven v. Niagra Machine & Tool Works, Inc.* (1981), Ind. App., 417 N.E.2d 1165, on reh. 425 N.E.2d 654. Where, however, the purchaser of the product knows its characteristics and dangerous propensities, and no additional warning or literature that could have been furnished by the seller at the time of sale would have improved the buyer's under-

standing thereof, the seller cannot be held liable in a suit by an injured purchaser's employee. *Shanks v. A.F.E. Industries, Inc.* (1981), Ind., 416 N.E.2d 833, 837–838. The threshold question is whether a duty to warn arose. *American Optical Co. v. Weidenheimer* (1983), Ind., 457 N.E.2d 181.

 Thus, the ultimate factual question to be answered in this case is whether the seller Niehaus had a duty to warn or instruct the purchaser Alumax of the roofing material's dangerous propensities

(a) to corrode and weaken in a corrosive atmosphere,

(b) to corrode and weaken at a greater rate when excessively overlapped in a corrosive atmosphere during erection, and

(c) to collapse because too thin to support the weight of a repairman walking upon it unaided by additional supporting structures or devises.

The answer turns upon whether Alumax as a purchaser having common understanding knew or should have known of these dangerous propensities at the time it purchased this roofing material, or whether any one or all of such propensities were unreasonable dangers unknown to Alumax at that time. If Alumax because of its common understanding knew or should have known of all of these propensities, no duty to warn or instruct arose. *Perfection Paint* and *Bemis, supra.* If, on the other hand, any one or more of these propensities were unreasonable dangers unknown to Alumax, a duty to warn or instruct Alumax at the time of sale arose as to Niehaus. It is undisputed here Niehaus gave no warnings or instruction to Alumax at the time of sale.

The record at this stage does not affirmatively show what Alumax knew or should have known about these dangerous propensities so far as the safety of its workmen who would later repair a roof using such material as components thereof when such roof was placed in a corrosive atmosphere. The only evidence currently available pertained to Alumax's economic concerns only, namely, the product was cheaper but would corrode and require re-

placement sooner than fiberglass components. No evidence or reasonable inference appears either way as to the purchaser's knowledge of these propensities vis-a-vis the safety of its repairmen who would later work on such a roof. Only the factfinder may make these determinations after a full-blown trial, not a trial court in summary judgment proceedings postured as discussed above.

Because we reverse, we need not discuss Hinkle's second issue.

Reversed and remanded for further proceedings consistent with this opinion.

MILLER and NEAL, JJ., concur.